## In re SOUTHOLD DEVELOPMENT CORP.

### No. CV 91–2012.

United States District Court,
E.D. New York.

Dec. 23, 1991.

Andrew J. Maloney, U.S. Atty. by Patricia C. Henry, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Meltzer, Goldstein & Wolf, P.C. by Ronald Terenzi, Mineola, N.Y., for debtor.

Cadwalader, Wickersham & Taft, by Mark Jacobs, New York City, for Creditors' Committee.

Phillips, Nizer, Benjamin, Krim & Ballon, by Louis A. Scarcella, Garden City, N.Y., for County of Suffolk, State of N.Y.

Bertram E. Hirsch, Floral Park, N.Y., for Robins Island Preservation Fund, Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, the County of Suffolk appeals from certain orders of United States Bankruptcy Judge Robert J. Hall, dated May 28, 1991 and June 13, 1991. More specifically, the May 28, 1991 order confirmed the Second Amended Plan of Reorganization of Southold Development Corporation, and the Expungement Order, dated June 13, 1991, adjusted the claim of the County of Suffolk. For the reasons stated below, this Court reverses the orders of the Bankruptcy Court and remands for further proceedings.

## BACKGROUND

Southold Development Corporation ("debtor") is a New York corporation formed in 1979 and wholly owned by Robinsonade A.G. ("RAG"), a Liechtenstein corporation. Debtor's primary asset is comprised of approximately 535 acres of largely undeveloped land which is located in Suffolk County. This asset consists of a major parcel known as Robins Island, located in the Peconic Bay, and two smaller parcels of land totalling less than one acre in the Town of Southold, New York.

On June 30, 1988, debtor, as seller, and the Robis Corporation, ("Robis"), as purchaser, entered into an agreement to sell the above-mentioned real property for a purchase price of $15,200,000 ("the Robis Contract"). ADI[1] 8, Ex. 8. According to the express terms of the Robis Contract, time was of the essence for every covenant, limitation, condition, requirement, and any other provision in the agreement.

---

1. The items contained in the record on appeal shall hereinafter be referred to as "ADI ___".

ADI 8, Ex. 8, para. 25(1). Furthermore, the Robis Contract provided that the "[c]losing shall in no event occur later than January 31, 1989." ADI 8, Ex. A, para. 5(a).

Prior to the closing of the sale, the question of a possible claim to title by the Wickham family arose.[2] The claim caused a cloud on the title which was unsatisfactory to the terms of the Robis Contract, and apparently for that reason the parties failed to close.

During the same period that these events were taking place, debtor had defaulted on obligations owed to the Northfork Bank and Trust Company ("the Bank"), a mortgagee of debtor. Pursuant to a judgment of foreclosure entered in a proceeding in New York Supreme Court, Suffolk County, a foreclosure sale of the subject property was scheduled to take place on June 8, 1989 in order to satisfy the indebtedness of approximately $1,100,000.

In April of 1989, Robis sued in state court for specific performance and an abatement of the purchase price, and on June 5, 1989, Robis obtained a temporary restraining order enjoining debtor from taking any action to sell Robins Island. By order to show cause entered June 6, 1989, the state court vacated that injunction. *See* ADI 58, Ex. M. In support of its order to show cause, debtor's counsel asserted that the contract between Robis and debtor was cancelled. Moreover, listed among debtor's affirmative defenses to the Robis action was the defense that the contract between the parties had terminated. *See* ADI, Ex. B. Thereafter, on June 17, 1989, a contract was prepared by debtor and the County of Suffolk ("Suffolk"), according to which debtor and Suffolk purportedly agreed to transfer Robins Island and the other two parcels of property to Suffolk for a sum of $9,200,000. ADI 8, Ex. H. As a result of debtor's negotiations with Suffolk, the Bank adjourned the scheduled foreclosure sale to July 6, 1989.

On July 4, 1989, debtor entered into a third contract for the sale of Robins Island

with The Aston Group, as purchasers, for a price of $10,000,000 plus other consideration. That contract specifically provided that the agreement was subject to the cancellation and termination of the agreement entered into with Suffolk. ADI 91, Ex. C. However, on July 20, 1989, debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.* That filing stayed all pending litigation against debtor. Among the lawsuits pending at the time were those brought against debtor by Robis, the Robins Island Preservation Fund, Suffolk, and the foreclosure action brought by the Bank.

During what appears to have been an extremely complex bankruptcy proceeding, debtor filed its plan. That plan contemplates a sale of Robins Island to Robis, concurrent with a tax-free like kind exchange involving three Panamanian islands. As noted above, debtor had asserted prior to the filing of the bankruptcy petition that the Robis Contract had terminated; however, the contract appears to have been reinstated and modified after the bankruptcy filing. In addition, it is to be noted that the Bankruptcy Court, during the confirmation process, denied Suffolk's $6,000,000 claim and accepted the $20,000,000 claim of Robis for voting purposes. Thereafter, the Bankruptcy Court entered an order confirming the plan, from which Suffolk now appeals.

On appeal, Suffolk argues, *inter alia,* that: debtor's Chapter 11 filing was executed in bad faith in order to avoid the Suffolk contract; the Bankruptcy Court erred in expunging Suffolk's claim for damages; and that the Bankruptcy Court erred as a matter of law in resurrecting the Robis Contract, in that it had terminated of its own accord prior to the execution of the Suffolk contract *and* prior to the filing of debtor's Chapter 11 petition. Because this Court finds that the Bankruptcy Court erred as a matter of law in resurrecting the Robis Contract, which had terminated prior to the filing of the petition, for the reasons

---

**2.** That claim was subsequently dismissed by this Court. *Robins Island Preservation Fund v.*

*Southold Devel. Corp.,* 755 F.Supp. 1185 (E.D.N.Y.1991).

stated below that determination is reversed and the case remanded for further proceedings.

## DISCUSSION

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure governs review of bankruptcy court determinations by the district court. Under that rule "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."[3] Fed.R.Bkrptcy.P. 8013 (1991). With respect to questions of law, however, review is *de novo*. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981); *In re Hammons,* 614 F.2d 399 (5th Cir.1980). "Where there are pure questions of law or mixed questions of law and fact the District Court may conduct a *de novo* review." *In re Mader,* 108 B.R. 643, 644 (N.D.Ill.1989).

■ This appeal presents a hybrid regarding the standard of review. To the extent that the bankruptcy court made factual findings, those findings may be reviewed under the clearly erroneous standard. With respect to issues of contract interpretation, review must be *de novo*. With these standards in mind the Court turns to address the parties' contentions.

*The Robis Contract*

■ As a general proposition, time is not of the essence in a contract for the purchase and sale of realty in the absence of a clear and unequivocal provision making it so. *Spence v. Curry,* 126 A.D.2d 632, 511 N.Y.S.2d 69, 70 (2d Dep't 1987). Contrary to debtor's assertions that time was not of the essence due to the fact that the Robis Contract only provided that "[t]he closing ... shall in no event occur

later than January 31, 1989," which language has been held not to be clear and unequivocal so as to render time to be of the essence, *see O'Connell v. Clear Holding Co.,* 126 A.D.2d 530, 510 N.Y.S.2d 653 (2d Dep't 1987), section 25(1) of the Robis Contract expressly provided that:

"time is of the essence of every covenant, limitation, condition, requirement and other provisions of this Agreement."

ADI 8, Ex. A. Therefore, the contract between debtor and Robis was clearly intended to be time of the essence. However, the Court must further inquire to determine whether the parties mutually agreed to waive this provision and extend the "drop-dead" date beyond January 31, 1989.

■ The Court acknowledges the proposition that under New York law an oral waiver of the time for the sale of real property may be given effect until withdrawn. *Bacchetta v. Conforti,* 108 Misc.2d 761, 438 N.Y.S.2d 892 (1981); *Royce v. Rymkevitch,* 29 A.D.2d 1029, 289 N.Y.S.2d 598 (3d Dep't 1968); 1A Warren's Weed New York Real Property, Contracts, § 28.-03. To that end, it has been noted that "[T]he statute of frauds is not applicable because of the doctrine of equitable estoppel." *Bacchetta,* 438 N.Y.S.2d at 894.

In a decision dated June 8, 1990, the Bankruptcy Court held that the Robis contract had not terminated pre-petition due to the intent of both the debtor and Robis, and reasoned that:

Although the parties did not close title by the designated date, neither party to the contract took any action which would have established their intent to treat the contract as being terminated. Instead, they continued their discussions and negotiations in an attempt to resolve the disputes that had arisen and proceed with the transaction.

ADI 61 at 2–3.

■ However, in light of all the circumstances, the Bankruptcy Court's find-

---

**3.** A finding is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer* *City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g denied,* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948)).

ing is not supported by the facts and is erroneous as a matter of law. The record as a whole supports no other conclusion but that the Robis contract had terminated, and thereafter until the time that debtor filed its Chapter 11 petition, no actions taken by debtor constituted a revival of that contract. Although conduct of the parties may create a waiver of a time of the essence provision, *see Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821, 831 (S.D.N.Y.1969), such was not the case herein. Rather, when the parties failed to close on the specified date, "the contract was at an end." *Rhodes v. Astro–Pac, Inc.*, 51 A.D.2d 656, 378 N.Y.S.2d 195, 197 (4th Dep't 1976), *aff'd*, 41 N.Y.2d 919, 394 N.Y.S.2d 623, 363 N.E.2d 347 (Ct.App.1977).

On April 6, 1989, Robis sued debtor in state court for specific performance of the Robis Contract and an abatement of the purchase price. In its answer to the Robis complaint dated June 5, 1989, debtor pleaded as an affirmative defense that the Robis Contract was cancelled and that debtor was free to negotiate with third parties for the sale of Robins Island. ADI 57, Ex. B. Debtor, motivated to enter into a contract for the sale of Robins Island to prevent a foreclosure sale on the property (which was scheduled for June 8, 1989), was in the process of completing an agreement with Aston for the sale of Robins Island on June 5, 1989. Debtor was unable to complete its contract with Aston prior to the foreclosure sale.

On June 7, 1989, debtor entered into a contract with Suffolk County. *See* ADI 91, Ex. B. Subsequently, on June 18, 1989, debtor's attorney wrote to the County requesting that the County waive two title exceptions [4] and make an effort to clear title within 30 days. On June 21, 1989, debtor amended its answer in the Robis action and repeated its affirmative defense that the Robis contract was cancelled. Indeed, as is clear, debtor was negotiating with various third parties. ADI 67, p. 92. Thereafter, on July 6, 1989, having denied the request originally, the County acceded to debtor's request to accept title with the outstanding exceptions. ADI 58, Ex. F–1. On July 4, 1989, to obtain interim financing, debtor entered into a backup contract of sale with Aston which was made explicitly contingent upon the failure to transfer Robins Island to Robis or Suffolk.

Suffolk sought to set a closing date of July 12, 1989, but that date was adjourned to July 14, 1989 at the request of debtor's attorney. ADI 68, p. 12. Debtor failed to appear and tender a deed on the agreed upon closing date of July 14, 1989. In addition, no request was made to adjourn the July 14, 1989 closing. Upon breach of the County contract, the County commenced an action in state court seeking specific performance. A temporary restraining order preventing the sale of Robins Island to anyone but the County was entered by that court. ADI 58, Ex. O.

In consideration of these facts, the record clearly illustrates a breakdown in communications between debtor and Robis, none of which were explained or distinguished in the Bankruptcy Court's findings of fact. The affirmative acts taken by debtor in negotiating and entering contracts with third parties, along with its pleadings in state court which explicitly asserted that the Robis contract was cancelled, leaving debtor free to negotiate, lead to the conclusion that Robis and debtor failed to revive their contract and come to new terms following the termination of the original contract in January of 1989. Additionally, the affirmative act of Robis suing the debtor for specific performance reveals that any attempts to further negotiate failed.

The parties, if they so agreed, could have drawn up a new agreement to evidence their intent to be bound. Not only was this step not taken, but debtor actively entered into negotiations and *contracts* with third parties for the sale of Robins Island. Simply stated, the record as a whole does not support the finding made by the Bankruptcy Court, and as a matter of law the Robis contract terminated pre-petition.

---

**4.** These title exceptions were the Robis and Wickham claims to Robins Island.

 Contracts terminated prior to the filing of a bankruptcy petition are not property of the debtor's estate, and the court cannot resuscitate previously extinguished contract rights. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1214 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Benrus Watch Co. Inc.*, 13 B.R. 331, 334 (Bkrtcy.S.D.N.Y.1981) (citation omitted) (noting that "contracts that have been effectively terminated prior to the filing of a Chapter 11 petition cannot be reviewed by the bankruptcy court"). As noted above, the Robis Contract expired pre-petition due to the fact that the Robis Contract contained a material time of the essence provision, and following the "drop-dead" date, the parties failed to revive or renegotiate their contract prior to the Suffolk contract or the Chapter 11 filing.

## CONCLUSION

For the reasons stated above, the finding by the Bankruptcy Court that the Robis Contract is part of the debtor's estate is reversed, and the remaining issues raised by the appeal, including the assertion that the debtor's Chapter 11 petition was filed in bad faith and that the expungement of the County's claim for damages was improper, are remanded to the Bankruptcy Court for further consideration in light of this opinion.

SO ORDERED.