In re Paul DILL, Debtor.

Paul DILL, Appellant,

v.

The DIME SAVINGS BANK,
FSB, Appellee.

Bankruptcy No. 92–87179.
No. CV 93–1040 (ADS).

United States District Court,
E.D. New York.

Jan. 21, 1994.

Zinker & Gelfand (Stephen P. Gelfand, of counsel), Smithtown, NY, for debtor-appellant.

Paul, Hastings, Janopsky & Walker (Harvey A. Strickon, of counsel), New York City, for appellee.

## OPINION AND ORDER

SPATT, District Judge.

This is a consolidated appeal from two orders of the Bankruptcy Court, Judge Robert J. Hall, dated January 22, 1993, granting the respective motions of appellee The Dime Savings Bank, FSB ("Dime") to have two Receivers be excused from the turnover requirements of section 543(a) and (b) of the Bankruptcy Code, 11 U.S.C. § 543(a) and (b). Jurisdiction over this appeal is based on 28 U.S.C. § 158.

## FACTUAL BACKGROUND

The Dime is the owner and holder of prepetition promissory notes executed by the Debtor Paul Dill ("Dill") in the aggregate principle amount outstanding of $7,840,-749.30. The notes are secured by mortgages on four properties. Two of these properties are the subject of this appeal and the underlying motions: 480/490 Wheeler Road, Happauge, Town of Islip, New York ("Wheeler Road"), and 70 Horseblock Road, Happauge, Town of Islip, New York ("Horseblock") (collectively the "Properties"). The promissory notes executed by Dill with respect to these two Properties ("Notes"), in the principal face amounts of $4,300,000 for the Wheeler Road property and $650,000 for the Horseblock property, are secured by consolidated mortgages. As additional security Dill executed collateral assignments of leases and rents to Dime, and, with respect to the Wheeler Road property, also executed a personal guarantee for the final $600,000 of the total indebtedness represented by the note for that property.

Under the terms of the Notes, Dill was to pay the balance of unpaid principal and accrued and unpaid interest on the Notes in April, 1991. Dill failed to do so, and based on his defaults the Dime initiated foreclosure proceedings in September, 1992, in the New York State Supreme Court, Suffolk County.

At the time of the foreclosure proceedings, Dime was owed approximately $648,000 on the Horseblock Note and $4,600,000 on the Wheeler Road Note. On September 30, 1992 and October 2, 1992, Receivers were appointed for the two Properties by the state court. Dill filed a Chapter 11 petition on December 28, 1992.

Soon after Dill filed for bankruptcy, the Dime moved before the Bankruptcy Court by orders to show cause, signed on January 6, 1993, for the Receivers to be excused from the turnover requirements of section 543(a) and (b) of the Bankruptcy Code,[1] and be allowed to retain possession, custody and control of the Properties pursuant to section 543(d)(1) of the Bankruptcy Code.[2] In support of its motions, the Dime submitted the affidavits of the Receivers for each of the properties. With respect to the Horseblock property, the Receiver for that property alleged that upon taking possession of the property, he discovered extensive and gross mismanagement by the Debtor in the form of maintenance deficiencies, failure to obtain a certificate of occupancy, failure to comply with building ordinances, failure to maintain an orderly record keeping system, and failure to adequately market vacant space. With respect to the Wheeler Road Property, the Receiver for that property alleged that upon taking possession of the property, he discovered extensive mismanagement by the Debtor in the form of electrical and construction maintenance deficiencies, failure to repair the fire alarm system, failure to obtain a certificate of occupancy, expired building permits, failure to obtain insurance coverage for

the property, failure to keep a record keeping system, maintaining all money, invoices and receipts in a cardboard box, and the expenditure of $62,743 in security deposits by the Debtor.

In his affidavit in opposition to the Dime's motions, the Debtor denies some of the Receivers' allegations, and offers explanations for others. Based on the Receivers' affidavits accompanying the Dime's motions, Dill's affidavit accompanying his opposition brief, and a hearing on Dime's motions held on January 8, 1993, the Bankruptcy Court granted Dime's motions and excused the Receivers from having to turn over the Properties and any rents collected to the Debtor. This appeal followed.

## ISSUES ON APPEAL

The Debtor raises two issues on appeal:

1. Did the Bankruptcy Court err in granting the motion of the Dime Savings Bank, FSB when it failed to conduct an evidentiary hearing on the questions of fact presented.

2. Did the Bankruptcy Court err in granting the motion of the Dime Savings Bank, FSB when it excused the Receiver from complying with the turnover requirements of section 543(a) and (b)(1) of the Bankruptcy Code, and permitted the Receiver to retain possession, custody and control of the property based upon the record before it.

Essentially, the Debtor argues that the Bankruptcy Court should have held an evidentiary hearing in order to assess the facts concerning mismanagement of the Properties

1. 11 U.S.C. § 543 states:

    (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

    (b) A custodian shall—
    (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date

that such custodian acquires knowledge of the commencement of the case; and
    (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property that, at any time, came into the possession, custody, or control of such custodian.

2. 11 U.S.C. § 543(d)(1) states:

    (d) After notice and hearing, the bankruptcy court—
    (1) may excuse compliance with subsection (a), (b), or (c) of this section, if the interests of the creditors and, if the debtor is not insolvent, of equity holders would be better served by permitting a custodian to continue in possession, custody, or control of such property.

**224**

alleged by the Dime in support of the its motions. Secondly, the Debtor argues that as a matter of law the Receivers should not have been excused from the requirements of section 543(b). The Court disagrees with the Debtor on both issues, and affirms the orders of the Bankruptcy Court.

## DISCUSSION

### 1. *Standard of Review.*

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure establishes the standard for a district court's review of a bankruptcy court's order or judgment. Rule 8013 provides as follows:

> On an appeal the district court … may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

While the bankruptcy court's findings of fact may not be set aside by the district court unless clearly erroneous, the bankruptcy court's legal conclusions are reviewed *de novo. In re Southold Development Corp.,* 134 B.R. 705, 708 (E.D.N.Y.1991). *Accord Shugrue v. Air Line Pilots Assoc. Int'l (In re Ionesphere Clubs, Inc.),* 922 F.2d 984, 988 (2d Cir.1990). A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Southold Development,* 134 B.R. at 708 n. 3 (citations omitted).

■ Further, on appeal from an order of the bankruptcy court, the district court should not consider any evidence not before the bankruptcy court at the original hearing. *See Matter of Silverman,* 6 B.R. 991 (D.N.J. 1980); *Union Bank v. Blum,* 460 F.2d 197 (9th Cir.1972).

### A. *Need for an Evidentiary Hearing.*

■ Section 543(d) of the Bankruptcy Code provides that "after notice and hearing" a custodian may be excused from the turn-over requirements of that section. Section 102(1)(A) of the Bankruptcy Code, 11 U.S.C. § 102(1)(A), defines "notice and hearing" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." Nothing in the statute or legislative history necessarily requires that an *evidentiary* hearing be held.

■ In this case, there was adequate notice of a hearing on the matter to the parties. The debtor argues, however, that there were disputed issues of material fact regarding the Receivers' allegations of mismanagement at each of the Properties, and, therefore, the circumstances precluded granting the Dime's motions without conducting an evidentiary hearing. The Court disagrees. Under the circumstances, the oral hearing held by the Bankruptcy Court afforded the parties an opportunity to present their case, and was appropriate given the issues to be decided by the court.

■ During the hearing, Judge Hall heard argument from the Dime concerning the extent of the alleged mismanagement of the Properties, and explanations from the Debtor giving the reasons why the Properties were in their current state. In deciding to excuse the Receivers from the turnover requirements of section 543(a) and (b), the Bankruptcy Court ultimately found that (i) the Dime was subsidizing the operation of both properties because of the situations created by the Debtor's mismanagement; and (ii) that the Debtor wrongfully appropriated the security deposits at the Wheeler Road property.

We do not find the factual bases for the Court's conclusions that the Receivers may be excused to be clearly erroneous. Indeed, the Debtor does not dispute that the Wheeler Road security deposits were spent, or that the Properties are currently not generating enough income to adequately finance their repair. Instead, the Debtor attempts to explain these facts away. The record before the Bankruptcy Court establishes more than a reasonable inference of mismanagement: the Debtor had spent the security deposits, certificates of occupancy had not been ob-

tained, and the premises required substantial repairs that were being subsidized by the Dime. Having reviewed the record before the Bankruptcy Court, this Court is not left with "the definite and firm conviction that a mistake has been committed," by the Bankruptcy Court in its ruling. *Southold Development,* 134 B.R. at 708. *Cf. Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (the function of an appellate court is not to decide factual issues *de novo,* and "[i]f the [court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate] court may not reverse it. . . .").

Accordingly, this Court finds that the Bankruptcy Court did not err in failing to hold an evidentiary hearing on the matters before it. Moreover, the determinations of fact on which Judge Hall rested his decision to excuse the Receivers from the turnover requirements of section 543(a) and (b) are not clearly erroneous and, thus, do not warrant reversal.

### 2. *Excuse of the Receivers.*

■ The Debtor argues that the Bankruptcy Court erred as a matter of law in excusing the Receivers from the turnover requirements of section 543(a) and (b). The Bankruptcy Court's legal determination is reviewed *de novo.*

■ Section 543(a) and (b) of the Bankruptcy Code mandates a "custodian" to turn over to the bankruptcy trustee or debtor-in-possession any property of the debtor that is in the possession, custody or control of the non-bank custodian. *In re Powers Aero Marine Services, Inc.,* 42 B.R. 540, 543 (Bankr. S.D.Tex.1984); *accord In re Constable Plaza Associates, L.P.,* 125 B.R. 98, 103 (Bankr. S.D.N.Y.1991). Section 101(11) of the Bankruptcy Code defines "custodian" to include a state court-appointed receiver.

■ Despite the mandate of section 543(a) and (b), section 543(d)(1) permits the bankruptcy court in its discretion to excuse a custodian's strict compliance with the turnover provisions of section 543(a) and (b), "if the interest of creditors would be better served by permitting the custodian to contin-

ue in possession of the property." The exception available under section 543(d)(1) is a modified abstention provision, akin to the abstention provisions found in section 305 of the Code. *See* Comment to 11 U.S.C. § 543; *Constable Plaza Associates,* 125 B.R. at 103.

■ A Court considering whether to exercise its discretion under section 543(d)(1) may consider several factors indicative of whether the interests of creditors would be better served. These factors have evolved to include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action. *See Constable Plaza Associates,* 125 B.R. at 103–04 (citing cases); *In re Northgate Terrace Apartments, Ltd.,* 117 B.R. 328, 332 (Bankr. S.D.Ohio 1990); *Powers Aero Marine Services,* 42 B.R. at 544–45; *In re CCN Realty Corp.,* 19 B.R. 526, (Bankr.S.D.N.Y.1982). The interests of the debtor, however, are not part of the criteria considered when applying section 543(d)(1). *See 4 Collier on Bankruptcy,* ¶ 543.05 at 543–12 (15th Ed.1993) ("section 543(d)(1) does not require an analysis of the interests of the debtor").

■ The Dime argues that application of the factors enumerated in *Constable Plaza Associates* supports excusing the Receivers. First, the Dime contends that the Properties' income cannot fund a successful reorganization, because there is no positive income stream from the Properties. Rather, the Dime alleges it must continue to infuse its own capital into the Properties—approximately $700,000—in order to pay property taxes and conduct the necessary repairs and compliance with applicable laws. Second, the Dime contends that the Record is "replete" with evidence of mismanagement of the Properties. Third, the Dime argues that it is speculative to consider whether the Debtor will use the turnover property to benefit

creditors, because the Properties are not generating positive income with which to benefit creditors. Fourth, the Dime argues there are no allegations of avoidance issues in this case concerning the Properties retained by the Receivers, and should such issues arise, the Debtor is not precluded from pursuing an avoidance action.

The Debtor disagrees with the Dime's contentions, and asserts—without any analysis—that application of the factors enumerated in *Constable Plaza Associates* to the facts of this case compels a determination that the Receivers turn over the Properties to the Debtor. The Debtor further asserts that the Court's consideration of whether to excuse the Receivers in this case does not require anything more than assessing the impact of the automatic stay on the rights of the parties in this case. The Debtor relies exclusively on *Constable Plaza Associates, supra,* to support his assertions.

In *Constable Plaza Associates,* the bankruptcy court considered whether to excuse a receiver from the turnover requirements pursuant to section 543(d)(1). After reviewing the case law and summarizing the factors listed above, the court found that (i) it was premature to determine the likelihood of a successful reorganization, (ii) the rents from the debtor's operations could be used to benefit creditors, (iii) there were no issues of mismanagement raised by the debtor, and (iv) an issue of avoidance existed with respect to the assignment of rents. *See* 125 B.R. at 103–04. The court went on to consider the impact of the automatic stay on the continuance of the receivership, and held that, "in light of all the circumstances in [the] case," until the automatic stay was modified to allow the state foreclosure action to continue, the receiver should comply with the turnover requirements of the Bankruptcy Code. *Id.* at 104.

This Court finds that the factual scenario in *Constable Plaza Associates* is distinguishable from the instant case. Here, the Bankruptcy Court found that the Dime had to subsidize the repair and maintenance of the Properties, and that there was mismanagement of the Properties. These two findings significantly differentiate the present case

from *Constable Plaza Associates,* and are enough to warrant excusing the Receivers from turning over the Properties. *See e.g., In re Plantation Inn Partners,* 142 B.R. 561, 564 (Bankr.S.D.Ga.1992) (receiver temporarily excused from turnover requirements where there is evidence of prior mismanagement by debtor); *In re KCC–Fund V, Ltd.,* 96 B.R. 237, 240 (Bankr.W.D.Mo.1989) (receiver excused from turnover requirements where properties were not maintained and sadly neglected); *CCN Realty Corp., supra,* 19 B.R. at 529 (where bank is justifiably concerned that the turnover by the receiver to the debtor of rent proceeds is a prelude to proceeds being frittered away, the receiver is properly excused from the turnover requirements of section 543); *Matter of WPAS Inc.,* 6 B.R. 40, 44 (Bankr.M.D.Fla.1980) (receiver excused from turnover requirements where debtor clearly mismanaged property).

Moreover, avoidance issues have not been raised in this case, as they were in *Constable Plaza Associates.* Thus, all the circumstances of the instant case point to a different result than the one reached in *Constable Plaza Associates.* The Court also notes that the Bankruptcy Court's decision to excuse the Receivers is not permanent, as the Bankruptcy Court's Orders allows the court to reconsider its decision within six months.

Finally, the Court does not accept the Debtor's argument that the automatic stay provisions of section 362 of the Bankruptcy Code are all that matter in the present inquiry. Despite the automatic stay provisions of section 362, section 543(d)(1) grants the bankruptcy court discretion to excuse the Receiver from complying with the turnover requirements. The Debtor's argument asks the Court to, in effect, read out of the Bankruptcy Code the operative effect of section 543(d)(1). The Court cannot do this. The Bankruptcy Code's provisions cannot be read in isolation, but must be interpreted in light of the remainder of the statutory scheme. *See United Savings Assoc. v. Timbers of Inwood Forest,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988); *Sun Finance Co., Inc. v. Howard (In re Howard),* 972 F.2d 639, 640 (5th Cir.1992); *In re Kaveney,* 60 B.R. 34, 36 (9th Cir. BAP 1985)

(conflicting provisions of Bankruptcy Code should be construed to achieve consistency). The automatic stay provision is just one factor a court may consider among others, when determining whether to excuse a custodian pursuant to section 543(d)(1).

## CONCLUSION

The Bankruptcy Court did not err in not holding an evidentiary hearing on the matters before it, and the findings of Judge Hall regarding mismanagement of the Properties and the Dime's need to subsidize repair of the Properties were not clearly erroneous. Moreover, the Bankruptcy Court did not err as a matter of law in excusing the Receivers from the turnover requirements of the Bankruptcy Code, pursuant to section 543(d)(1). The Court finds that application of the factors enumerated in *Constable Plaza Associates* supports excusing the Receivers from the turnover requirements.

Accordingly, the Orders of the Bankruptcy Court dated January 22, 1993, excusing the Receivers from the turnover requirements of section 543(a) and (b) of the Bankruptcy Code, are affirmed in all aspects.

The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**