223 B.R. 860 (1997)
In re Steven T. EMMERLING, Debtor.
Jennifer BATSTONE, Plaintiff-Appellee,
v.
Steven T. EMMERLING, Defendant-Appellant.
Bankruptcy No. 96-10172, BAP No. 96-50032.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued June 13, 1997.
Decided August 18, 1997.
*861 *862 The Clements Firm by Thomas G. Clements, Glens Falls, NY, for Defendant-Appellant.
William J. Nealon, III, Glens Falls, NY, for Plaintiff-Appellee.
Before NINFO, II, GALLET, and HARDIN, Jr., JJ.
ADLAI S. HARDIN, Jr., Judge.
Debtor-defendant-appellant Steven T. Emmerling ("Emmerling") appeals from an order of the Bankruptcy Court denying his motion to reopen his Chapter 7 case in order to allow him to bring a further motion to vacate a default judgment obtained by plaintiff-appellee Jennifer Batstone ("Batstone") in her adversary proceeding to determine dischargeability under 11 U.S.C. § 523(a)(6) of her unliquidated personal injury claim against Emmerling. This Panel has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(b) and (c).
For the reasons discussed below, we REVERSE and REMAND the matter to the Bankruptcy Court with a direction to enter an order reopening the bankruptcy case, vacating the default judgment and scheduling further proceedings, including the filing of a complaint and answer or responsive motion in the adversary proceeding.

Background
On January 21, 1995 Emmerling went to the Country Roads Saloon and Dance Hall in Gansevoort, New York, with Batstone. All agree that upon leaving the saloon there was an altercation between them in the parking lot outside the saloon in which Batstone was injured.[1]
On April 4, 1995 Emmerling pled guilty to charges of disorderly conduct and assault in the third degree in satisfaction of criminal charges that resulted from the incident and was sentenced to probation.
Later in 1995, Batstone commenced an action against Emmerling in Saratoga County Supreme Court alleging that she sustained personal injuries in the altercation as a result of Emmerling's conduct. Emmerling appeared in the state court action and answered the complaint.
On January 12, 1996, Emmerling filed a no-asset petition in the Bankruptcy Court *863 under Chapter 7 of the Bankruptcy Code. The filing stayed the state court action pursuant to 11 U.S.C. § 362(a)(1).
Both parties' conduct of proceedings in the Bankruptcy Court leading ultimately to the motion to reopen constituted a virtually unbroken chain of violations of applicable rules, mistakes and bad judgment.
Batstone started it off on February 12, 1996 by filing a motion (i) to vacate the automatic stay and (ii) to declare non-dischargeable her unliquidated claim against Emmerling. Emmerling's counsel timely filed an affidavit in opposition to the motion, presumably pointing out that a claim for dischargeability under section 523(a) must be brought by adversary proceeding and cannot be determined on a motion. On the stated return date of the motion, Emmerling's counsel traveled to Albany and appeared in court, but was informed that no hearing was scheduled. The record does not reveal why no hearing was scheduled or what disposition was made of the February 12 motion.
Next, on March 13, 1996 Batstone served a summons in the captioned adversary proceeding together with a one-page document denominated "Notice of Motion  Objections to Discharge" addressed to Emmerling's counsel and an affidavit in substantially the same form as the earlier affidavit of Batstone's counsel in support of the February 12 motion. No complaint was ever served or filed by Batstone. Emmerling's counsel elected to make no response to the summons and notice of motion which had been served upon him.
Having failed to serve any complaint or substantive document other than the procedurally defective motion in this adversary proceeding, on April 30, 1996 Batstone made an ex parte motion for a default judgment against Emmerling. Since the motion was never served on Emmerling or his attorney, Emmerling obviously had no opportunity to oppose it. After a default judgment was entered, Batstone served Emmerling's counsel with the default judgment in late May or early June.
Emmerling's order of discharge was issued on June 6, 1996, and his case was closed on August 24, 1996.
Unfortunately for Emmerling, his attorney waited until late August or early September to file a motion to vacate the default judgment. This motion was rejected by the Clerk of the Bankruptcy Court because Emmerling's bankruptcy case had been closed on August 24.
Emmerling's counsel then moved on September 13, 1996 to reopen his Chapter 7 case for the purpose of vacating the default judgment. On October 3 the motion was argued and on October 18 the Bankruptcy Court signed an order denying the Emmerling's motion to reopen his bankruptcy case. This appeal followed.

Standard of Review
Rule 8013 of the Federal Rules of Bankruptcy Procedure determines this Panel's standard of review of a bankruptcy judge's judgment, order or decree. A bankruptcy court's findings of fact may not be set aside unless clearly erroneous, and a bankruptcy judge's legal conclusions are reviewed de novo.[2]See In re David Fischer, 202 B.R. 341, 344 (E.D.N.Y.1996); In re Dill, 163 B.R. 221, 224 (E.D.N.Y.1994); In re Piccolo v. Dime Savings Bank of New York, 145 B.R. 753, 754 (N.D.N.Y.1992); In re Southold Dev. Corp., 134 B.R. 705, 708 (E.D.N.Y.1991); accord In re Ionosphere Clubs, 922 F.2d 984, 988-89 (2d Cir.1990), cert. denied sub nom., Air Line Pilots Ass'n Int'l v. Shugrue, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). A finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." In re Dill, 163 B.R. at 224 citing In re Southold Dev. *864 Corp., 134 B.R. at 708, n. 3 (citing Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, reh'g denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948)).

Discussion
A. The ruling below
In denying Emmerling's motion to reopen his bankruptcy case, the Bankruptcy Court appears to have focused on three points. First, since the default judgment was served in late May or early June, the Bankruptcy Court could see no reason why Emmerling's counsel waited until August to move to vacate the default judgment. Second, the Bankruptcy Court, presumably referring to standards under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 9024, determined that Emmerling could not simply come back within a year's time to request vacatur of the default judgment; Emmerling was required to show something more such as "new evidence" or a point in "the interest of justice." Third, the Bankruptcy Court determined that in the interest of finality in this process, there was no reason, "months after the fact, to go back in to do anything" regardless of whether there existed a reason to revisit the issue.
B. Section 350(b): the key issue
On this appeal the central question is whether the Bankruptcy Court abused its discretion in refusing to reopen Emmerling's bankruptcy case. We believe that it did.
Section 350(b) states in pertinent part: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "While the Code does not define `other cause' for purposes of reopening a case under section 350(b), the decision to reopen or not is discretionary with the court, which may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." Collier on Bankruptcy, ¶ 350.03[5] pp. XXX-XX-XX (1996). "Section 350(b) gives the bankruptcy court broad discretion in deciding whether to reopen a case, and the decision to grant or deny a motion to reopen is binding on review absent a clear showing that there was an abuse of discretion." Id.; see also In re Chalasani, 92 F.3d 1300, 1307 (2d Cir.1996) (citing Bartle v. Markson, 357 F.2d 517, 523 (2d Cir.1966); In the Matter of Shondel, 950 F.2d 1301, 1304 (7th Cir.1991); In re Cisneros (Cisneros v. United States), 994 F.2d 1462, 1464-65 (1993)) (citing In re Herzig, 96 B.R. 264, 266 (9th Cir. BAP 1989)); In re Haker, 411 F.2d 568 (5th Cir.1969); Hawkins v. Landmark Fin. Co. (In re Hawkins), 727 F.2d 324 (4th Cir.1984); In re Dodge, 138 B.R. 602, 605 (Bankr.E.D.Cal.1992); In re Candelaria, 121 B.R. 140, 142 (E.D.N.Y.1990) ("a district court ... on appeal can vacate the [bankruptcy court] decision only upon a showing that the failure to reopen was an abuse of discretion"); In re Bennett, 13 B.R. 643, 645 (Bankr.W.D.Mich.1981).
With this backdrop in mind, we shall review the several factors relevant to a determination of Emmerling's motion to reopen and vacate the default judgment.
Laches
At the threshold Batstone argues that Emmerling's motion should be denied on the ground of laches. Although laches is a factor to be considered, see H.R. Report No. 595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978) ("laches may constitute a bar to an action that has been delayed too long"), under these circumstances it cannot be said that the time lag was "too long." Emmerling moved to reopen his bankruptcy case promptly after learning that it had been closed, and he made the rejected motion to vacate the default just three months after his counsel was served with the default judgment. No statute, rule or case law mandates that either motion be brought sooner.
Moreover, a lapse of time alone does not resolve the issue. A court of equity must consider whether reopening a case would prejudice the adversary or cause a change in the adversary's position. See In re Texaco, 182 B.R. 937, 947 (Bankr.S.D.N.Y. *865 1995) (recognizing the Second Circuit's position that "[o]ne factor traditionally considered by courts of equity in determining whether the plaintiff's claim is barred by laches is the prejudice to the defendant resulting from the delay") (quoting Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 65 (2d Cir.1983)); see also Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Inv., Inc.), 162 B.R. 426, 438 (Bankr.S.D.N.Y.1993). In the absence of some meaningful prejudice, a court of equity would abuse its discretion by barring the reopening of a case.
Batstone's contention that reopening the case would cause harm by delaying the state court action and allowing witnesses' memories to fade is plainly spurious, since the state court action has not been and need not be delayed at all. By contrast, barring reopening the bankruptcy case denies Emmerling a trial on the merits on the most fundamental and important right under the Bankruptcy Code, the right to a discharge and a "fresh start."
On these facts, Emmerling's loss of his day in court outweighs the modest inconvenience, if any, to Batstone. Batstone has been free to pursue the state court action ever since the default judgment in late May 1996 if not before (we do not know the outcome of the February 12, 1996 motion to lift the stay), and reopening the Emmerling Chapter 7 case should not delay that action one iota.
Cause to reopen and vacate the default judgment
The statutory "cause" to reopen under section 350(b) in this case depends upon whether cause exists to vacate the default judgment, since that is the sole purpose of reopening the bankruptcy case. See In re Chalasani, 92 F.3d at 1307 (citing In re Danley, 14 B.R. 493, 494 (Bankr.D.N.M. 1981)).
The authority to grant and vacate a default judgment is within the broad discretion of the trial court; yet, default judgments are generally disfavored, and cases should be tried on their merits whenever possible. Gregorian v. Izvestia, 871 F.2d 1515, 1523 (9th Cir.1989), cert. denied, 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989); Affanato v. Merrill Bros., 547 F.2d 138, 140 (1st Cir.1977); In re Schnell, 148 B.R. 365, 366 (D.Mass.1992).
The default judgment should have been vacated on several different, independently-sufficient grounds.
(a) Fed.R.Civ.P. 4, 7, 8, 10: the requirement of a complaint
A federal court obtains personal jurisdiction over a defendant when he or she is served in accordance with Rule 4 of the Federal Rules of Civil Procedure. Rule 4(c) requires that "a summons shall be served together with a copy of the complaint" (emphasis added). Rule 7(a) states in relevant part that "[t]here shall be a complaint and an answer" and "[n]o other pleading shall be allowed" (emphasis supplied). Rule 8(a) requires that the complaint contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Rule 10(a) requires that "[e]very pleading shall contain ... a designation [i.e., complaint, answer, etc.] as in Rule 7(a)".
Batstone violated every one of these Rules. Instead of serving a complaint as required, Batstone's counsel served with the summons a notice of motion objecting to discharge with an affidavit.[3] Thus, there is some basis for Emmerling to assert that Batstone never validly commenced an adversary proceeding against him and that he had no obligation to *866 answer a motion which was procedurally defective on its face. While not directly on point, see e.g. In re Jackson, 1997 WL 215804, *1 (D.C.Cir.1997); Classic Auto Refinishing, Inc. v. Marino (In re Marino), 37 F.3d 1354, 1357 (9th Cir.1994); Bramesco v. Drug Computer Consultants, 148 F.R.D. 690 (S.D.N.Y.1993); In re Dahlquist, 33 B.R. 101, 103 (Bankr.D.S.D.1983).
We agree with those decisions which have refused to dismiss technically defective pleadings to the prejudice of plaintiffs, particularly pro se plaintiffs, whose inartful submissions reasonably put the other side on notice of the claim. See, e.g., Pfeiffer v. Rand (In re Rand), 144 B.R. 253, 255 (Bankr.S.D.N.Y.1992) (Brozman, J.); Maroski v. Futrell (In re Futrell), 69 B.R. 378, 379-380 (Bankr.W.D.La.1987). Both Rand and Futrell are consistent with the liberal thrust of the rules and cases to the effect that disputes should be decided on the substantive merits rather than technical defects. Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities").
But it is one thing to say that a plaintiff's inartful submission should not be dismissed with prejudice for lack of technical compliance with the Rules, as in Rand and Futrell; it is quite another to hold that a defendant should be bound to a default judgment with prejudice for having failed to respond to patently defective process. We know of no case so holding. Just as Batstone should not be denied her right to litigate her claim on the merits by reason of her counsel's failure to comply with the rules of pleading, so also Emmerling should not be deprived of his right to defend on the merits because of his attorney's judgment that he had no obligation to respond to an adversary proceeding that was procedurally defective. Stated differently, the fact that Batstone's summons and motion, rather than a complaint, objecting to discharge might withstand a dismissal with prejudice for failure to comply with the Federal Rules does not lead to the conclusion that Emmerling should be bound to a default judgment with prejudice for failing to respond to such a procedurally defective motion. No statute, rule or case law supports such a perverse and inequitable result.
The same logic and spirit of fairness that dictate that Batstone should be permitted to file a proper complaint with relation back (viz. Rand) also dictate that Emmerling be given a chance to reopen, vacate the default judgment and defend on the merits, if he has a meritorious defense.
(b) Rule 55: the requirement of notice
If Batstone did not meet the notice requirements of Rule 55 of the Federal Rules of Civil Procedure, then cause exists requiring the court to reopen Emmerling's bankruptcy case and vacate the default judgment. Bankruptcy Rule 7055 makes Federal Rule 55 applicable to adversary proceedings. Rule 55(b)(2) states in pertinent part: "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application" (emphasis supplied). Since the Rule requires notice of an application for default judgments upon a defendant who has "appeared" in the action, the court must first consider whether Emmerling had appeared in the action. Thus, the question is, what constitutes an appearance?
"[An] appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court." In re Roxford Foods, Inc. v. Ford, 12 F.3d 875, 881-82 (9th Cir.1993). Indeed, courts have held that a party's prior appearance in a different but closely-related or identical case constitutes an appearance requiring Rule 55(b)(2) notice. See Press v. Forest Laboratories, Inc., 45 F.R.D. 354 (S.D.N.Y.1968) (although defendant failed to answer second complaint, default judgment was vacated in a federal suit filed subsequent to previously filed identical suit in which plaintiff was denied leave to amend complaint); Turner v. Salvatierra, 580 F.2d 199 (5th Cir.1978) (court found that the two complaints were sufficiently identical *867 that an answer to the first constituted an appearance in the second requiring 55(b)(2) notice). Moreover, courts have recognized informal appearances where the informal actions of a party manifested intent to defend an action. See Muniz v. Vidal, 739 F.2d 699, 700-01 (1st Cir.1984) (court found presenting motions and counterclaims to adversary tantamount to appearance); H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 692 (D.C.Cir.1970) (appearance found where "exchanges between the parties ... were the normal effort to see if the dispute could be adjusted by agreement, but neither party was in any doubt that the suit would be contested if the efforts to agree were unavailing"); In re Kellar, 125 B.R. 716, 718-19 (Bankr.N.D.N.Y.1989) (citing Muniz for an example of "any kind of appearance"); CSB Corp. v. Cadillac Creative Advertising, Inc., 136 F.R.D. 34, 36 (D.R.I. 1990) ("Because [defendant] made an appearance, as evidenced by settlement negotiations, notice was required"); cf. Wilson v. Moore and Assoc., Inc., 564 F.2d 366 (9th Cir.1977) (recognized oral and written settlement discussions may constitute an informal appearance but required more when a "diligent party" explicitly warned the defendant of impending action).
In light of these authorities, it is difficult to argue that Emmerling did not "appear" in an adversary proceeding filed in his own Chapter 7 case where he is a defendant, especially where, as here, he had responded in opposition to the originally scheduled motion by Batstone which was substantially the same as the motion improperly annexed to the summons. The Bankruptcy Court should have found that he made an appearance which would trigger the requirement of Rule 55 notice.
Indeed, for purposes of Rule 55 as applicable under Bankruptcy Rule 7055 we hold that a debtor named as defendant in an adversary proceeding in his own bankruptcy case is always deemed to have "appeared" in the adversary proceeding so as to require notice of a motion for a default judgment. Under Rule 55 a party moving for a default judgment against the debtor must always notice the debtor. In a voluntary bankruptcy case initiated by the debtor, it is counterintuitive to say that the debtor has not "appeared" in an adversary proceeding against the debtor which exists jurisdictionally solely by reason of the debtor's own bankruptcy case, in a court which has jurisdiction over both the debtor and the plaintiff. The logic of the above-cited cases holding that a defendant's earlier appearance in a different lawsuit triggers the requirement of Rule 55 notice compels the conclusion that all debtors are entitled to Rule 55 notice of motions for default judgment in their own bankruptcy cases.[4]
Because the Rule is mandatory, failure to provide the required Rule 55 notice requires vacatur of the default judgment. Press v. Forest Laboratories, Inc., 45 F.R.D. at 357 ("Where notice of a motion for a default judgment is required, but not given, such a judgment entered without notice must be vacated as a matter of law"); In re Roxford Foods, Inc., 12 F.3d at 881-82 (9th Cir.1993) ("the failure to give required Rule 55(b)(2) notice violated due process, and the [default] judgment should be vacated"). But see Traveltown, Inc. v. Gerhardt Inv. Group, 577 F.Supp. 155, 157 (N.D.N.Y.1983) ("Where the 3 day notice requirement of Rule 55(b)(2) has not been complied with, the default judgment is generally regarded as voidable under Rule 60(b)(6) rather than void under Rule 60(b)(4)"); United States v. Martin, 395 F.Supp. 954, 960-61 (S.D.N.Y.1975) ("[T]he resulting failure to give notice ... is a procedural rather than a jurisdictional defect which does not necessarily render the judgment void"); In re Couts, 188 B.R. 949, 953 (Bankr.E.D.Mich.1995) ("Defective service might constitute good cause sufficient to set aside the entry of a default.... [However,] in order to set aside a default judgment, the defendant must make a showing of meritorious defense") (emphasis in original) (citing United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir.1983) *868 and Creditors Committee of Park Nursing Center, Inc. v. Samuels (In re Park Nursing Center, Inc.), 766 F.2d 261 (6th Cir.1985)).
(c) Rule 55: issues of willfulness, meritorious defense and prejudice
Rule 55(c) states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b)(6) authorizes relief from an order or judgment for "any other reason justifying relief from the operation of the judgment."
Willful default, existence of a meritorious defense, and prejudice to one against whom relief is being sought are factors in determining "good cause" sufficient to warrant vacatur of a default judgment. See In re Chalasani, 92 F.3d at 1307; Sony Corp. v. S.W.I. Trading, Inc., 104 F.R.D. 535 (S.D.N.Y.1985); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir.1993).
(i) The "willfulness" standard in the context of a default judgment
The Second Circuit has "implied that it will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or litigant's error." American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir.1996). However, the Second Circuit has refused to vacate a judgment where the moving party had apparently made a strategic decision to default. Id. at 60-61 (citations omitted). In determining whether default was willful, the Second Circuit also examines the motion to vacate in light of past conduct of the litigant. Press v. Forest Laboratories, Inc., supra; In re Men's Sportswear, Inc., 834 F.2d 1134, 1139 (2d Cir.1987) ("The filing of a complaint in a new action does not erase a litigant's past abuse of the judicial system"). See also Turner v. Salvatierra, supra (5th Cir.). The Panel may also consider whether the default was "the result of a good faith mistake." Sony Corp. v. Elm State Electronics, 800 F.2d 317, 320 (2d Cir.1986). However, the Second Circuit will vacate default judgments even in instances of willful default, provided that the underlying judgment lacked "any validity, whatsoever." Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57-58 (2d Cir. 1990), cert. denied, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991) ("[T]he calculation of damages was preposterous.... [The] underlying claims were either facially invalid or utterly unsupported.... Allowing the default judgment to stand would ... have constituted a serious miscarriage of justice").
Although Emmerling's counsel concedes that failing to answer the summons and accompanying motion was a conscious decision on counsel's part, that was not a tactical decision to default but a considered response to the patently improper procedure employed by Batstone. A strong argument may be made that the process served on Emmerling was a jurisdictional nullity and required no response, but the point is moot and need not be decided in this appeal.
What is clear is that Emmerling did intend to defend Batstone's section 523(a)(6) claim, as shown by his prior opposition to an identical motion. It is also clear that Emmerling was not given the opportunity to oppose the default judgment because he was not given prior notice of its application. At worst, Emmerling's counsel made a mistake as to whether the summons and "notice" required a response. Such a mistake cannot be considered a willful default in the sense of manifesting an intent not to defend or a deliberate decision to ignore court obligations to delay, harass or obtain tactical advantage.
(ii) "Meritorious defense"
In order to satisfy the criterion of a "meritorious defense," the defense need not demonstrate a likelihood of success at this stage. See American Alliance Ins. Co., Ltd. v. Eagle Ins., Co., 92 F.3d at 61. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Anilina Fabrique de Colorants v. Aakash Chem. and Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir.1988); accord American Alliance, 92 F.3d at 61. The defense must state underlying facts in proffering a "meritorious defense," and not just conclusory denials. *869 Enron, 10 F.3d at 98; Sony Corp., 800 F.2d at 320-21.
Courts of equity favor an adjudication of a case on its merits rather than defeat by default. See Enron, 10 F.3d at 95 ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits") (citing Traguth v. Zuck, 710 F.2d 90, 94 and Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)).
Counsel for each side presented sharply conflicting versions of events that will be hotly contested if the parties proceed to trial. At this stage it would be a manifest abuse of discretion to accept one unlitigated version of the facts over the other. If Emmerling can prove the facts suggested by his counsel, he may be able to successfully defend a section 523(a)(6) claim in which Batstone has the burden of proof.
(iii) "Prejudice"
While the Bankruptcy Court did not articulate the prejudicial consequence to Batstone as a result of Emmerling's delayed actions, it nonetheless appeared to find this factor significant in its ruling. In considering prejudice to the plaintiff, the Second Circuit examined whether a delay will "result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir.1983) (quoting Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, Civil, § 2699 at 536-37). Mere delay, without any articulated prejudicial consequence to Batstone, is not sufficient to constitute prejudice. By contrast, the denial of adjudication on the merits is the most extreme prejudice to Emmerling.
In short, all three elements for vacatur of a default judgment  lack of willfulness, meritorious defense and lack of prejudice to plaintiff as against extreme prejudice to defendant  have been shown in this case.

Conclusion
As noted at the outset, this appeal has come before the Panel as a consequence of a series of mistakes by counsel for both sides. The parade of error includes:
 Batstone's improper February 12, 1996 motion objecting to dischargeability;
 Batstone's failure to notify Emmerling's counsel of her withdrawal of the February 12 motion, if, indeed, it was withdrawn;
 Batstone's failure to serve and file a complaint in compliance with the Bankruptcy Rules and the Federal Rules of Civil Procedure;
 Emmerling's failure to answer the motion attached to the summons (although he had already answered a substantially identical motion and may have been correct in viewing the motion with the summons as a procedurally defective nullity);
 Batstone's failure to give required Rule 55 notice to Emmerling and his counsel of the application for default judgment, even though Emmerling had already appeared in opposition to the previous defective motion and had obviously "appeared" in the bankruptcy case in which the adversary proceeding was pending; and
 Emmerling's failure to move expeditiously to vacate the default judgment (although no statute or rule required him to move more promptly than he did).
It is evident that the failure to comply with the Federal Rules, particularly on the part of counsel for Batstone, has resulted in a great deal of unnecessary litigation and cost and has thoroughly undermined the procedural foundations of the adversary proceeding. In such a situation, a court of equity must fashion a remedy which will protect the interests of the clients and conform the proceedings to the requirements of the judicial process as set forth in the Rules.
For the reasons stated above, Emmerling's bankruptcy case must be reopened and the default judgment entered in the adversary proceeding must be vacated. Batstone's motion accompanying the summons is defective under the Federal Rules and may be deemed *870 a procedural nullity. However, consistent with In re Rand and like decisions, Batstone should be given an opportunity to serve and file a proper complaint in accordance with the Federal Rules, with relation back to the date of the original summons so as not to prejudice her right to litigate her dischargeability claim on the merits. Emmerling, of course, will have an opportunity to answer or move with respect to the complaint in accordance with the Rules.
The matter is remanded to the Bankruptcy Court for proceedings consistent with the foregoing.
NOTES
[1] Although the appellate briefs of both sides present counsel's competing recitations of facts concerning the incident, the disputed facts are based largely on matters not in the record and, in any event, are irrelevant to the appeal.
[2] Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel, may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed.R.Bankr.P. 8013.
[3] Upon inquiry during oral argument, Batstone's counsel attempted to explain this clear breach of the Federal Rules as a confusion with state court practice, presumably referring to section 3213 of the New York Civil Practice Law and Rules which permits a motion for summary judgment in lieu of complaint. CPLR § 3213, however, can be used only with a claim based upon a written instrument for the payment of money only or a judgment. In an adversary proceeding to determine dischargeability under the fact-intensive "willful and malicious" standard of section 523(a)(6), where counsel knows that the facts are hotly contested, it is absurd to suggest that the rules governing pleadings and discovery can be bypassed by a motion at the outset.
[4] To the extent that dicta in In re Zorrilla, 115 B.R. 894, 898-9 (Bankr.W.D.Tex.1990) suggests a contrary rule, we disagree.