468 B.R. 634 (2012)
In re HBLS, L.P., Debtor.
No. 93-B-46399 (BRL).
United States Bankruptcy Court, S.D. New York.
April 17, 2012.
*635 Kravet & Vogel LLP, By: Donald J. Kravet, Joseph A. Vogel, Maria E. Rodi, New York, NY, for Dion Friedland.
Hughes Hubbard & Reed LLP, By: Daniel S. Lubell, New York, NY, for Charles C. Hickox.

MEMORANDUM DECISSION AND ORDER DENYING FRIEDLAND'S MOTION FOR AN ORDER TO (I) REOPEN THE CASE PURSUANT TO BANKRUPTCY CODE § 350(b), RULE 5010 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND LOCAL RULE 5010-1, AND (II) GRANT SUCH OTHER RELIEF AS THE COURT MAY DEEM JUST AND PROPER
BURTON R. LIFLAND, Bankruptcy Judge.
Before the Court is the motion (the "Motion") of Dion Friedland ("Friedland") seeking an order to (i) reopen the chapter 11 bankruptcy case of HBLS, LP, ("HBLS" or the "Debtor") pursuant to sections 350(b) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 5010, and Local Bankruptcy Rule for the Southern District of New York 5010-1, so that this Court may enforce its prior orders and other binding determinations issued during this case; and (ii) grant Friedland such other and further relief as may be just and proper.
The dispute underlying this Motion pertains to a sale in Anguilla of Anguillan leasehold property[1] subject to Anguillan charges (liens), which have been the subject of extensive litigation in Anguillan courts. After a review of the voluminous filings pertaining to the Motion, this Court finds that it is inappropriate to reopen the chapter 11 case to interfere with a dispute that has an overwhelming nexus to Anguilla. Accordingly, the motion is DENIED.

*636 BACKGROUND

The factual context of the Motion spans over a quarter century, and its underlying disputes have been heavily litigated in courts throughout New York and Anguilla.

1. The HBLS Bankruptcy
In 1986, Leeward Isles Resorts, Ltd. ("LIR") obtained a lease over property in Maundays Bay, Anguilla (the "Cap Juluca Property") with the intent to develop the Cap Juluca Resort. LIR was wholly owned by the Friedland Group, an entity headed by Friedland. In October of 1986, the Friedland Group sold its stock of LIR (the "LIR Stock") to HBLS for $1.4 million pursuant to a stock purchase agreement (the "Stock Purchase Agreement") and entered into a pledge agreement (the "Pledge Agreement") stipulating that, if HBLS defaults under the Stock Purchase Agreement, it would transfer the LIR Stock back to the Friedland Group. HBLS and LIR subsequently built the Cap Juluca Resort and formed Maundays Bay Management, Ltd. ("MBM," and collectively with LIR and HBLS, the "Resort Entities") to manage it. At that time, Charles C. Hickox ("Hickox") was a general partner of HBLS, as well as a shareholder of both LIR and MBM.
After making an initial payment to the Friedland Group, HBLS defaulted under the Stock Purchase Agreement. HBLS refused to transfer the LIR Stock back to the Friedland Group in accordance with the Pledge Agreement. The Friedland Group therefore obtained a judgment in 1993 in New York state court, which ordered HBLS to do so. But on December 27, 1993, without having transferred the LIR Stock, HBLS filed a voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code that stayed the Friedland Group's enforcement of the state court's judgment. On August 15, 1995, the Court referred the dispute between the Friedland Group and HBLS to mediation and appointed Barry M. Monheit as mediator (the "Mediator").

2. The Settlement Agreement and the Mediator's Determinations
Under the guidance of the Mediator, Friedland, on behalf of the Friedland Group, and Hickox, on behalf of LIR and MBM, and as a partner in HBLS and a shareholder in LIR and MBM, entered into a settlement agreement (the "Settlement Agreement"), which the Court approved on June 20, 1996. The Settlement Agreement (i) required HBLS to transfer its shares of LIR and MBM to the Mediator to hold in escrow as security for any amount the Mediator deemed HBLS owed the Friedland Group, and (ii) prohibited the Resort Entities or their equity holders from taking any action adversely affecting any right or interest of the Friedland Group (the "Friedland Group Protection Provision"). Pursuant to the authority bestowed on him by the Settlement Agreement and in accordance with the Pledge Agreement, the Mediator determined that HBLS owed the Friedland Group $4.6 million (the "Settlement Debt").
On January 9, 1997, Hickox registered three charges (the "Charges") on LIR's leasehold interest in the Cap Juluca Property based on personal loans (the "Personal Loans") he made to LIR. Subsequently, as a result of HBLS defaulting on its payments of the Settlement Debt, the Mediator sold the LIR and MBM stock held in escrow at an auction to Friedland for $500,100.00. Once Friedland obtained ownership of the LIR Stock, on September 17, 1997 (the "Stock Sale Date"), he asserted that Hickox's Charges on the Cap Juluca Property violated the Friedland Group Protection Provision. The Mediator agreed with Friedland, issuing a final determination (the "Final Award") that held, *637 inter alia that Hickox's registering his Charges on the Property violated the "terms, spirit and intent" of the Settlement Agreement. On May 7, 1998, the Court entered the Final Award as an Order of the Court. On June 9, 1998, Friedland obtained a deficiency judgment against the Resort Entities for $4.3 millionapproximately the same amount as the Settlement Debt.
In July of 1998, the Mediator issued an amplification (the "Amplification") of the Final Award to clarify certain issues. The Amplification deemed Hickox to be an unregistered charge holder on the Cap Juluca Property and prohibited his reliance on the Charges. The Amplification also noted that Hickox was no longer an equity holder of any of the Resort Entities as of the Stock Sale Date. Since the Friedland Group Protection Provision prohibited only the Resort Entities and their equity holders from taking action adverse to the Friedland Group, the Mediator found that Hickox was free to re-register his Charges on the Cap Juluca Property. It appears, however, that he never did so. Meanwhile, on October 24, 2003, based on the deficiency judgment of $4.3 million owed to the Friedland Group as a result of the Resort Entities' default, Friedland registered his own charges against the Cap Juluca Resort.

3. Anguillan Litigation Regarding the Charges and Underlying Loans
Over the course of the past decade, LIR and Hickox have litigated issues relating to Hickox's Charges on the Cap Juluca Property in multiple Anguillan courts. The Eastern Caribbean Supreme Court originally determined that two of the three Personal Loans were the product of self-dealing and therefore void. See Hickox v. Leeward Isles Resorts Ltd., AXAHCV/1998/0097, at p. 73 (Eastern Caribbean Supreme Court, High Court of Justice, Anguilla, July 8, 2008)[2] (finding the loans "void for want of authority"). Thus, the two Charges based on the void Personal Loans were also found to be invalid. Id. ("The Registration of the First and Second Charges by Mr. Hickox over the leasehold interest of LIR in and around January, 1997 is hereby set aside...."). The court, however, considered the other Charge (the "Third Charge") to be valid. Id. at 74. In addition, referring to the Mediator's Amplification, the Court held the Third Charge effective only from the Stock Sale Date, after which Hickox was no longer an equity holder in LIR. Id. ("The Registration of the Third Charge is hereby deemed to be effectively registered only as from the date following the sale of the LIR shares pursuant to the Settlement Agreement."). As such, the court found that the Mediator's Amplification only delayed the effective date of the Third Charge to the Stock Sale Date and that, under Anguillan law, there was no need for Hickox to re-file that Charge.
On appeal, the Anguillan appellate court found that the two Personal Loans the Eastern Caribbean Supreme Court held to be the product of self-dealing were, in fact, ratified by LIR and therefore valid. See Leeward Island Resorts Ltd. v. Hickox, HCVAP 2008/003, at p. 26 (Anguillan Court of Appeal, March 22, 2010)[3] (setting aside "the learned [trial] judge's ruling and declar[ing] that both the First and Second Transactions are valid and do not offend against the rule against self-dealing."). *638 The Appellate court left unaltered the lower court's conclusion regarding the effective date of the Third Charge. Id. at 33 (discussing the trial judge's findings and conclusions relating to the Charges and determining that since "[t]hese grounds were not pursued at the hearing, and no skeleton arguments addressed them I have concluded therefore that they were abandoned."). Thus, after years of litigation on issues relevant to the Motion, Anguillan courts have, based on the Mediator's Amplification, given effect to the Charges as of the Stock Sale Date and have not required Hickox to re-file the Charges.

4. The Anguilla Liquidation Proceedings and the Instant Motion
In April of 2008, Friedland sold his interest in LIR and MBM to Cap Juluca Properties, Ltd. (the "Purchaser"). The Purchaser agreed to make payments to Hickox towards repayment of the Personal Loans, but defaulted on those payments. In 2011, the Cap Juluca Resort went into liquidation in large part because it could not pay its debts to Hickox, who intends to conduct a secured creditor sale of the Cap Juluca Property. On February 27, 2012, Hickox hired an auctioneer and began marketing the Property. An auction is currently scheduled for May 2, 2012 (the "Hickox Auction").
Friedland contends that this Court's orders and the Mediator's binding determinations bar Hickox from relying on the Charges he filed while an equity owner of LIR, and, accordingly, Hickox is not a registered charge holder with respect to the Cap Juluca Property. In turn, Friedland moves to reopen the case under section 350(b) of the Code to file a motion to enforce this Court's orders and the Mediator's determinations to enjoin the Hickox Auction from proceeding. Hickox counters that there is no reason to reopen the case, as he is not in violation of the Court's orders, this dispute lacks a close nexus to the HBLS bankruptcy, and there are alternative fora where the parties' disputes can be litigated. A hearing was held on April 17, 2012.

DISCUSSION
Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." FED. R. BANKR.P. 5010. Bankruptcy Code section 350(b) in turn provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Friedland argues that the case should be reopened "for other cause." While the Code does not define "other cause," courts ordinarily consider equitable concerns, the merits of the underlying claim, and the availability of relief in other fora. See Batstone v. Emmerling (In re Emmerling), 223 B.R. 860, 864 (2d Cir. BAP 1997) (explaining that a bankruptcy court "may consider numerous factors including equitable concerns" under section 350(b)); Katz v. I.A. Alliance Corp. (In re I. Appel Corp.), 300 B.R. 564, 571 (S.D.N.Y.2003); Mid-City Bank v. Skyline Woods Homeowners Assoc. (In re Skyline Woods Country Club, LLC), 431 B.R. 830, 835 (8th Cir. BAP 2010) ("The availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case."). Ultimately, the decision to reopen a case is at the broad discretion of the bankruptcy court. See Emmerling, 223 B.R. at 864 ("[T]he decision to reopen or not is discretionary with the court"). In view of the facts at hand, the Court does not find cause to reopen the case under section 350(b) of the Code.

1. Equitable Considerations
The equitable considerations surrounding the present Motion weigh against *639 reopening the case. In this respect, "courts typically examine the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors." In re I. Appel Corp., 300 B.R. at 571. The Motion arises from the chapter 11 case of HBLS commenced on December 27, 1993 and closed by Final Decree on March 29, 1999. The case was reopened in 2000 to apportion the liability between the Resort Entities to Friedland before being closed again by Final Decree on June 3, 2008. In short, the Debtor's assets were fully administered in this case more than a decade ago. Moreover, the instant Motion revolves around a dispute between two non-debtor entities. Reopening the case to consider this dispute would therefore not benefit the Debtor's estate or its creditors. Accordingly, there is no equitable basis for reopening the case.

2. The Merits of the Underlying Claim
In determining whether "cause" exists to reopen a bankruptcy case, "it is appropriate for a bankruptcy court to consider the merits of the underlying claim." In re Kassover, 448 B.R. 625, 631 (S.D.N.Y.2011). Specifically, "where the underlying claim is certain to fail upon a reopening of the proceedings, a bankruptcy court may properly deny the motion." Id.; see also State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir.1996) ("[I]f the decision not to reopen was bottomed on a finding that the default judgment could not be set aside, such is a permissible basis to deny relief, because reopening in that event would be meaningless."); Emmerling, 223 B.R. at 865 ("The statutory `cause' to reopen under section 350(b) in this case depends upon whether cause exists to vacate the default judgment, since that is the sole purpose of reopening the bankruptcy case."). Friedland sets forth at least two claims that are certain to fail upon a reopening of the proceedings.
First, Friedland contends that the Court must reopen the case to interpret its prior orders because Hickox intends to argue in Anguilla that the Mediator's prior determinations are not binding on him at all. But the courts in Anguilla have previously determined that Hickox's charges have effect and that he is bound by the Mediator's determinations. See Leeward Island Resorts Ltd. v. Hickox, HCVAP 2008/003, at pp. 9-10 (Anguillan Court of Appeal, March 22, 2010); Leeward Isles Resorts Ltd. v. Hickox, AXAHCV/1998/0097, at pp. 15-16 (Eastern Caribbean Supreme Court, High Court of Justice, Anguilla, July 8, 2008). Indeed, both of these courts applied collateral estoppel to a decision by the District Court for the Southern District of New York finding Hickox bound by the Mediators determinations. See Hickox v. Friedland (In re HBLS, L.P.), 01-CIV-2025, 2001 WL 1490696, at *8-9 (S.D.N.Y. Nov. 21, 2001). Accordingly, the Anguillan courts' accounting for the Mediator's determinations suggests that reopening the case in order to ensure the application of the Mediator's determinations in Anguilla would be "meaningless." See Emmerling, 223 B.R. at 865.
Second, Friedland asserts that Hickox is in violation of the Mediator's finding that Hickox may not rely on the Charges for any purpose. But this assertion is meritless because the Mediator also found that, as of the Stock Sale Date, Hickox was free to re-register the Charges "subject only to the requirements of Anguillan law," see Amplification of Mediator's Prior Award,[4] ¶ 5, and Anguillan courts subsequently gave effect to the Charges as of the Stock *640 Sale Date without requiring their re-registration. Specifically, the Eastern Caribbean Supreme Court deemed the Third Charge effective as of the Stock Sale Date, see Hickox v. Leeward Isles Resorts Ltd., AXAHCV/1998/0097, at p. 74, and the Anguilla Court of Appeals validated the other two Charges, see Leeward Island Resorts Ltd. v. Hickox, HCVAP 2008/003, at pp. 26, 33. The Court of Appeals also declined to consider the Eastern Caribbean Supreme Court's treatment of the effective date of the third Charge. Id. Each of these courts also accounted for and applied the Mediator's determinations in their decisions. Friedland's contention is therefore "certain to fail," as the Mediator held that the Charges could be re-registered under Anguillan law and Anguillan courts, with due consideration of the Mediator's findings, have permitted the Charges without requiring their re-registration. See Kassover, 448 B.R. at 631.
Throughout much of the above Anguillan proceedings, LIR was owned and controlled by Friedland. Therefore, granting the Motion in order to question Hickox's Charges would be concomitant to permitting Friedland an end-run around some of the sound findings of the Anguillan courts.[5] This Court, however, declines to grant him such an opportunity to re-litigate the same dispute under the guise of enforcing prior orders and determinations.

3. Availability of Relief in Other Fora
Courts routinely decline to exercise their discretion to reopen bankruptcy cases where the parties are seeking or could seek relief in a competent alternative forum. See, e.g., In re Skyline Woods Country Club, LLC, 431 B.R. at 835-36 (motion to reopen denied where state court had concurrent jurisdiction to adjudicate action to enforce bankruptcy court's former sale order); In re Antonious, 373 B.R. 400, 407 (Bankr.E.D.Pa.2007) (motion to reopen denied where discharge injunction could be raised as affirmative defense in state court action); In re Otto, 311 B.R. 43, 45 (Bankr.E.D.Pa.2004) (motion to reopen denied where "a reasonablealbeit not identicalalternative forum exists in the Tax Court" for resolution of dischargeability dispute).
Here, the courts of Anguilla have already handled or are available and competent to address Friedland's concerns. Friedland seeks enforcement of prior orders of this Court and the Mediator's determinations, but the courts of Anguilla, as discussed above, have already accounted for and given effect to those orders and determinations. To the extent that Friedland argues that Anguillan law requires Hickox to re-register his Charges as of the Stock Sale Date, the Anguillan courts have held otherwise. But should Friedland nevertheless wish to pursue this argument or any other argument pertaining to Hickox's Charges, the courts of Anguilla are available and competent to adjudicate these issues. There is thus no need for this Court to inject itself into proceedings that have already been or can be handled in Anguilla. Significantly, while advised of or served with the Motion, neither the Mediator, nor the LIR liquidators, nor any other interested party appeared or took a position with respect to the instant quest to reopen.
At bottom, (i) the dispute between Hickox and Friedland pertains to a sale in Anguilla of Anguillan property subject to *641 Anguillan charges, (ii) there is a high likelihood that this dispute's outcome would not have any effect on HBLS's twiceclosed (fully administered) estate, (iii) Anguillan courts have previously deferred to and applied this Court's orders, and Friedland has essentially litigated these same issues in Anguilla and lost. Accordingly, resolution of the FriedlandHickox disputes is clearly more appropriate in Anguilla, whose courts are and have been host to the claims of both the movant and respondent. The Court, therefore, does not find cause to reopen the case under section 350(b) of the Code.

CONCLUSION
In light of the above, the Motion is hereby DENIED.
IT IS SO ORDERED.
NOTES
[1] The underlying property is owned by the Anguillan government, which has granted a 99-year leasehold interest to LIR. See Motion of Dion Friedland for an Order Pursuant to Section 350 of the Bankruptcy Code Reopening the Bankruptcy Case (Dkt. No. 172), at ¶ 3.
[2] This decision is attached as exhibit 7 to the Declaration of Daniel S. Lubell in Support of the Objection of Charles C. Hickox to the Motion to Reopen the Bankruptcy Case [hereinafter the "Lubell Declaration"], Dkt. No 180.
[3] This decision is attached as exhibit 8 to the Lubell Declaration.
[4] The Mediator's Amplification is attached as exhibit 12 to the Declaration of Donald J. Kravet in Support of Motion to Reopen Chapter 11 Case, Dkt. No. 174.
[5] In fact, the Eastern Caribbean Supreme Court specifically addressed the issue of whether the Settlement Agreement precluded LIR, given that it was owned by Friedland, from challenging Hickox's Charges. Hickox v. Leeward Isles Resorts Ltd., AXAHCV/1998/0097, at pp. 51-53.