**In re Benjamin MOYETTE d/b/a Ben Moyette Construction and Anna Moyette, Debtors.**

No. 96 CV 4153(ADS).

United States District Court,
E.D. New York.

March 23, 1999.

Flower & Medalie, by Jeffrey Herzberg, of counsel, Bay Shore, NY, for the appellant-debtors Benjamin Moyette d/b/a Ben Moyette Construction and Anna Moyette.

Corwin, Solomon & Tanenbaum, P.C., by Clifford M. Solomon, of counsel, New York City, for the appellee European American Bank.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The Debtors, Benjamin Moyette d/b/a/ Ben Moyette Construction ("Benjamin Moyette") and Anna Moyette ("Anna Moyette," collectively "Moyette" or the "Debtors"), appeal from an oral Order of the United States Bankruptcy Court (Robert John Hall, U.S.B.J.), set forth on the record of July 9, 1996 and subsequently reduced to a written

Order dated July 22, 1996, denying the Debtors' motion to reopen their Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 350(b) to amend Schedule "D" to include a mortgage deficiency debt owed to the appellee, European American Bank ("EAB").

## I. BACKGROUND

### A. The Debtors Filing for Bankruptcy Relief: August 28, 1995

On August 28, 1995 ("the Filing Date"), the Debtors filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. In the Debtors' bankruptcy schedules, they claimed that after their exempt property was excluded and administrative expense were paid, there would be no funds available for distribution to unsecured creditors; this is commonly referred to as a "No Asset" case.

### B. EAB's State Court Mortgage Foreclosure Action against the Debtors: the State Court Action

At the time of the Filing Date, EAB held a mortgage on property located at North Kings Avenue, Babylon, New York known as "Section 208, Block 5, and known as Lots 36.14 and 36.15" on the Suffolk County Land and Tax Map (the "Subject Property"). Prior to the Filing Date of August 28, 1995, EAB had commenced a mortgage foreclosure action against Benjamin Moyette d/b/a Ben Moyette ("Ben Moyette"), one of the co-Debtors, with respect to the Subject Property (the "State Court Action"). Benjamin Moyette's former corporation, owned the Subject Property, and Benjamin Moyette had personally guaranteed the corporate debt.

### C. The Debtors' Bankruptcy Petition

Despite the pending State Court Action, the Debtors—apparently inadvertently—omitted from Schedule D of their bankruptcy petition the debt owing to EAB relating to the mortgage deficiency by Ben Moyette in the State Court Action. This debt was in the amount of $197,708.13. The Debtors' Statement of Financial Affairs, which is annexed as part of the bankruptcy petition, also does not reference the State Court Action by EAB

against Ben Moyette, although the Debtors were represented by the same law firm in both matters.

However, EAB was listed in the bankruptcy petition as follows: (1) in the Debtors' Matrix of Creditors; and (2) in the Debtors' schedules, albeit as the holder of a claim in the total sum of $100,000 secured by a second mortgage on the real property located at 806–808 North Kings avenue, Lindenhurst, New York. The Debtors allege, and EAB does not dispute, that this was a second debt due and owing EAB on a parcel of real estate that was contiguous to the Subject Property. Evidently, Benjamin Moyette was in the construction business, and he subdivided a parcel of real estate into six parcels of real property and build a home on each; as each home was built, he separately mortgaged each, leading to separate debts due and owing on each mortgaged parcel. EAB was listed in Schedule D of the bankruptcy petition, as well as the "Mailing Matrix," of creditors. However, this inclusion of EAB related to a separate debt owing to EAB regarding the other parcel of property, and not the Subject Property.

### D. Notice to EAB of the Bankruptcy Petition

Upon the filing of the Chapter 7 Bankruptcy Case, the Clerk of the Bankruptcy Court of the Eastern District of New York generally has a practice of submitting a printed notification of the commencement of the bankruptcy case to all parties listed in the Matrix of Creditors as prepared by the Debtor. Such mailing is required under Bankruptcy Rule 2002(1). It is unclear whether this actually was done in this case, since, as the Debtors acknowledge, the Clerk's affidavit of service, if any, is in the closed file located in the Federal warehouse in New Jersey.

EAB challenges its listing in the Matrix of Creditors in several key respects, claiming that: (1) it never received any notice of the commencement of the bankruptcy case, as is set forth in an affidavit from an Officer of EAB, Catherine Wilinski; and (2) in any event, the Mailing Matrix should have included EAB's attorneys, and not EAB's corpo-

rate address, given that the Debtors and their attorneys knew at the time of the Filing Date that Corwin, Solomon and Tanenbaum, P.C. were representing EAB, having dealt with EAB's counsel in the State Court Action. EAB also notes that the Debtors omitted from Schedule D of the bankruptcy petition the claimed debt owing to EAB in the amount of $197,708.13 relating to the deficiency by Moyette in the State Court Action relating to the Subject Property.

According to EAB, and as set forth more fully below, it first received notification of the Chapter 7 Bankruptcy case of Moyette in March 1996, after Moyette received his discharge, and after EAB served a motion in the pending State Court action to foreclose on the mortgage secured by Benjamin Moyette.

### E. The January 17, 1996 Discharge in Bankruptcy

On October 31, 1995, the Debtors attended a Section 341 Meeting of creditors. EAB complains that it was denied the opportunity to attend and participate in the Section 341 Meeting because it was not aware of the bankruptcy filing.

After the Chapter 7 Trustee was unable to realize any assets for distribution, the Trustee filed a "No Asset Report." By an Order dated January 17, 1996, the Debtors received their discharge in bankruptcy. The Bankruptcy Case was closed on January 29, 1996.

EAB maintains that the lack of notice further denied it an opportunity to object to the Debtors' discharge.

### F. EAB's Foreclosure on the Subject Property in the State Court Action

After the Filing Date, EAB foreclosed on the Subject Property in the State Court Action. As stated above, Benjamin Moyette's former corporation owned the property, and Benjamin Moyette personally had guaranteed the corporate debt. Subsequent to the foreclosure, EAB sought a deficiency judgment against Benjamin Moyette, individually, as part of the State Court Action. Benjamin Moyette responded in the State Court Action with a claim that the debt was discharged by

Order of the Bankruptcy Court dated January 17, 1996. The State Court refused to acknowledge the dischargeability of the EAB debt as part of the Bankruptcy Court's discharge order because the Debtors did not specifically list the debt in question in the bankruptcy schedules.

### G. The Debtors' Motion to Reopen the Chapter 7 Case to Amend Schedule D to Include the Additional Debt

On or about April 25, 1996, the Debtors moved the Bankruptcy Court for an Order reopening the Chapter 7 case to amend Schedule D to include the additional debt due and owing to EAB relating to the mortgage on the Subject Property. Following a hearing before on July 9, 1996, the Bankruptcy Court denied the Debtors' motion, stating:

Basically, if you look at the notice of motion, it is couched in the language of adding an additional debt, and I think that's what you are intending to do. The fact that EAB—another debt was listed is not good enough, especially when you fail to indicate that there is litigation which is ongoing and you fail to notice the attorneys for the bank that is involved in the litigation; so I am going to deny your motion.

I feel sympathy and empathy for you and your client, but that is not equity; so I am going to deny the motion.

(Tr., at pp. 12–13).

### H. The Debtors' Appeal

The Debtors appeal from the Bankruptcy Court's denial of their motion to reopen the Chapter 7 proceeding to: (1) permit the amendment of Schedule D to include an additional debt that was due and owing EAB; and (2) provide additional time for EAB to file objections to dischargeability of the debt. In the alternative, the Debtors ask this Court to issue an Order declaring that the debt that was formerly due and owing to EAB was discharged pursuant to the Discharge Order previously issued by the Bankruptcy Court.

EAB responds that the Bankruptcy Court properly denied the motion, in its exercise of discretion, pursuant to 11 U.S.C. § 523, which excepts from a discharge any debt

which is neither listed nor scheduled with the name of the creditor to whom the debt is owed, unless the creditor had notice or actual knowledge of the case in time to timely file a proof of claim and timely request for a determination of dischargeability of the debt. EAB argues that it had neither actual or constructive knowledge of the Debtors' Chapter 7 bankruptcy case. Alternatively, EAB asserts that the Debtors should have timely commenced an adversary proceeding to determine the "nature of the debt" to EAB, instead of moving to reopen the Chapter 7 case.

## II. DISCUSSION

The Court begins with the observation that the parties expend considerable energy on the issue of whether EAB had either actual or constructive knowledge of the Debtors' Chapter 7 bankruptcy case by virtue of the Debtors' inclusion in the petition a different debt owed to EAB, and the listing of EAB's corporate address, rather than its attorneys' address, on the Mailing Matrix. In the Court's view, this is not the determinative issue in this case. The core issue is not whether the debt to EAB was properly listed on the schedule or which address should have been listed on the Mailing Matrix but, rather, whether the bankruptcy court properly denied the Debtors' motion to reopen to amend the schedule and Mailing Matrix.

### A. *The Debtors' Motion to Reopen: The Standard*

■ The primary issue to be resolved on this appeal is whether the Bankruptcy Court abused its discretion in declining to reopen the bankruptcy case. This issue is governed by Section 350(b) of Chapter 11, which states in pertinent part: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "While the Code does not define 'other cause' for purposes of reopening a case under section 350(b), the decision to reopen or not is discretionary with the court, which may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations."

*In re Emmerling,* 223 B.R. 860, 864–65 (2d Cir. BAP 1997)(quoting Collier on Bankruptcy, P 350.03[5] pp. 350–10–11 [1996]). "Section 350(b) gives the bankruptcy court broad discretion in deciding whether to reopen a case, and the decision to grant or deny a motion to reopen is binding on review absent a clear showing that there was an abuse of discretion." *Id.* (quoting Collier on Bankruptcy, *id.;* and *In re Chalasani,* 92 F.3d 1300, 1307 [2d Cir.1996] [additional citations omitted]); *see also In re McNeil,* 13 B.R. 743, 745 (Bankr.S.D.N.Y.1981). "Therefore, the bankruptcy court's decision not to reopen a case may be vacated only 'upon a showing that the failure to reopen was an abuse of discretion.'" *In re Thompson,* 152 B.R. 24 (E.D.N.Y.1993) (quoting *In re Candelaria,* 121 B.R. at 142) (quoting, in turn *In re Sheerin,* 21 B.R. 438, 440 [1st Cir. BAP 1982]).

■ This Court assumes, as apparently the Bankruptcy Court did, without apparently deciding the issue, that the Debtors did not properly list the EAB debt on the schedule by including a different debt to EAB on contiguous property, and by listing EAB's corporate address rather than its attorneys' address. Nevertheless, the Debtors' "desire to amend 'a schedule to include an additional creditor and, thus, accurately reflect all debts owed,' generally 'constitutes sufficient cause to reopen' a no asset bankruptcy case." *In re Candelaria,* 121 B.R. at 142 (quoting *In re Jensen,* 46 B.R. 578, 581 [Bankr.E.D.N.Y. 1985]); *In re Daniels,* 51 B.R. 142, 143 [Bankr.S.D.Ohio 1985] ["A classic cause for invoking the cure of reopening is to add an omitted creditor to the schedules."]. This is because "[t]he Bankruptcy Code places a premium on scheduling all creditors...." *In re Candelaria,* 121 B.R. 140 (quoting *In re Godley,* 62 B.R. 258, 261–62 n. 1 [Bankr. E.D.Va.1986]). Significantly, "In the vast majority of cases, a debtor's motion to reopen is prompted, of course, by his desire to discharge the omitted debt. Absent some harm or prejudice to the omitted creditor, this motive is cited approvingly by bankruptcy courts, since it will accord relief to the debtor." *Id.* (quoting *Matter of Davidson,* 36 B.R. 539, 543 [Bankr.D.N.J.1983]).

■ "Thus, numerous courts have held that motions to reopen no asset cases to list omitted creditors should be liberally granted unless: (1) the omission was the result of fraud, recklessness or intentional design on the part of the Debtors, or (2) reopening would prejudice the creditor in two protected areas, i.e., its right to participate in a dividend and its right to obtain a determination of dischargeability." *Id.* (citing *Matter of Baitcher,* 781 F.2d 1529, 1534 [11th Cir.1986]; *In re Rosinski,* 759 F.2d 539, 541 [6th Cir. 1985]; *Matter of Stark,* 717 F.2d 322, 323 [7th Cir.1983] [per curiam]; *In re DeMare,* 74 B.R. 604, 605 [Bankr.N.D.N.Y.1987]; *In re Maddox,* 62 B.R. 510, 514 [Bankr. E.D.N.Y.1986]; *In re Godley,* 62 B.R. at 261; *In re Tinnenberg,* 57 B.R. 430, 432 [Bankr. E.D.N.Y.1985]; *In re Daniels,* 51 B.R. at 143; *Matter of Zablocki,* 36 B.R. 779, 783 [Bankr.D.Conn.1984]; *Matter of Davidson,* 36 B.R. at 543).

■ The parties agree that the first circumstance—that "the omission was the result of fraud, recklessness or intentional design on the part of the debtor"—is not present in this case. In fact, counsel for EAB candidly conceded below, "Actually, just to clarify something, we haven't alleged in our papers that there was, in any way, bad faith, nefarious conduct on the part of counsel in not listing EAB. I am sure it was an oversight.... The question of bad faith is not something this Court has to address because it is not something we have raised and it is not something that, I don't think at the end of the day, needs to factor into the determination." (Tr., at p. 7). Accordingly, the Court need only concern itself with the second factor, namely, whether reopening would prejudice the creditor in two protected areas, i.e., (1) its right to participate in a dividend; and (2) its right to obtain a determination of dischargeability.

### B. Would Reopening Prejudice EAB? The Section 523(a)(3) Exceptions to No Asset Cases

The right to participate in a dividend and the right to obtain a determination of dischargeability are at the heart of the exceptions to discharge provided for in 11 U.S.C. § 523(a)(3).

The relevant portions of Section 523 provide:

### 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

11 U.S.C. § 523

### 1. *Timely Filing of a Proof of Claim*

Bankruptcy Rule 3002(c) requires a proof of claim to be filed "within 90 days after the first date set for the meeting of credi-

tors...." Subsection (5) of the rule creates an exception, however, for what are commonly referred to as "no asset" cases. Where it is determined that a Debtor lacks assets sufficient to pay any dividend to his creditors, Rule 2002(e) provides for notice of that fact to be given to scheduled creditors and for them to be advised that they need not file any present proof of claim. If, at some future point—even after discharge—the trustee discovers estate assets sufficient to pay creditors a dividend, Rule 3002(c)(5) requires that creditors receive new notice and be given 90 days from that date to file proofs of claim.

As was noted in *In re Mendiola*, 99 B.R. 864, 867 (Bankr.N.D.Ill.1989), the sole purpose of a proof of claim is to allow the creditor to assert a right to participate in the distribution of an assets. In a no asset case, the right to file a proof of claim is initially "meaningless and worthless." *Id.* There simply are no assets to which to lay claim. For this reason, Rule 2002(e) permits creditors to be advised that they need not file proof of claim unless and until they receive notice that sufficient assets have been discovered to permit payment of a dividend. As a result, various courts have recognized that in a "no asset" Chapter 7 case, the time for filing a claim does not expire within 90 days of the creditors' meeting. It remains open indefinitely until non-exempt assets are found. *See Matter of Stark*, 717 F.2d at 324; *Matter of Baitcher*, 781 F.2d at 1531; *In re Rosinski*, 759 F.2d at 542; *In re Mendiola*, 99 B.R. at 867; *In re Padilla*, 84 B.R. 194, 195–96 (Bankr.D.Colo.1987); *In re DeMare*, 74 B.R. at 605; *In re Maddox*, 62 B.R. at 513; *In re Godley*, 62 B.R. at 261–62 n. 1; *In re Jensen*, 46 B.R. at 582; *Matter of Zablocki*, 36 B.R. at 781–82; *Matter of Davidson*, 36 B.R. at 542.

In view of these cases, to the extent that the Bankruptcy Court concluded that the debt to EAB was no longer dischargeable as a matter of law under § 523(a)(3)(A) and (B) for failure to give the creditor the opportunity to file timely notice, this Court disagrees. If the motion to amend were granted and EAB's debt added to the others which were scheduled, EAB would have the same opportunity to file a timely notice of claim as any other creditor in the event any assets are discovered. Thus, reopening this case could afford relief to the Debtors without prejudicing the added creditor.

### 2. *Timely Request for a Determination of Dischargeability*

EAB asserts that it was prejudiced because it was not informed of the Creditors' meeting and was unable to cross-examine the Debtors. However, it has been observed that "Section 523(a)(3)(A) only provides for a creditor's failure to timely file a proof of claim. 'Congress chose not to provide a remedy for creditors whose only loss was the opportunity to elect a trustee, question the debtor at the meeting of creditors, object to the debtor's claims of exempt property or object to discharge.'" (quoting *Robert S.C. Peterson, Inc. v. Anderson (In re Anderson)*, 72 B.R. 783, 786 [Bankr.D.Minn.1987]). "The suggestion that, if given notice when the case was filed, [the creditor] might have been able to discover non-exempt assets is too speculative to justify denying the discharge of his claim." *In re Beshensky*, 68 B.R. 452, 455 (Bankr.E.D.Wis.1987).

In addition, to the extent EAB maintains that the debt is of a kind excepted from discharge pursuant to Section 523(a)(2), (4), or (6)—concerning, respectively, instances of fraud; fraud while acting in a fiduciary capacity, embezzlement, or larceny; and willful and malicious injury by the debtor—and that EAB was denied its opportunity to file a dischargeability complaint, this argument is rejected. Generally, under Section 523(c), such a request for a determination of dischargeability must be made within sixty days of the first date set for the meeting of creditors. 11 U.S.C. § 523(c); Rule 4007(c). Under Rule 4007(c), motions to extend the time to file must be made within the sixty day period.

However, numerous courts have held that a creditor added after discharge in a no-asset case must be afforded a "reasonable" or an "appropriate period in which to file an adversary complaint." *In re Candelaria*, 121 B.R. at 144–45 (citing and quoting cases). Accordingly, if the debt to EAB is added to the Debtors' schedules and if EAB is then given

**500**

reasonable time to file a dischargeability complaint, it will suffer no irreparable harm from the reopening of the case.

## III. CONCLUSION

After reviewing the parties' submissions, having afforded the opportunity for oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the Bankruptcy Court's Order denying the Debtors' motion to reopen the case is reversed and vacated; and it is further

**ORDERED,** that the Debtors' motion to reopen to add the debt to EAB to its schedules is granted; and it is further

**ORDERED,** that this matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

**SO ORDERED.**