**In re Hosea M. PHELPS, Debtor.**

No. 02–52995–JDW.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 29, 2005.

Robert M. Matson, Macon, GA, for Debtor.

Christine A. Roddy, Matthew P. Stone, Atlanta, GA, for Respondents.

William M. Flatau, Macon, GA, for trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Debtor's Motion to Reopen Case. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On July 24, 2001, Debtor Hosea Phelps was injured in an automobile accident while he was a passenger on a bus operated by the Macon–Bibb County Transit Authority. Debtor's left shoulder was injured, requiring two surgeries and keeping him out of work for eight months. His medical bills arose pre-petition, and although insurance paid most of the bills, it did not pay all of them. For example, Debtor had to make co-payments for doctor visits and had to pay for his prescriptions.

Debtor filed a Chapter 7 petition on July 15, 2002, and did not list a cause of action for injuries arising from the accident on his schedules; he listed only one small medical bill as an unsecured claim. Debtor testified that he omitted the cause of action because his bankruptcy attorney did not ask him about potential lawsuits, even though Debtor had given his attorney copies of his medical bills. He testified that he read the schedules prior to signing them. In a previous bankruptcy case, filed in 1993, Debtor had listed another pending cause of action. However, in the 1993 case, his personal injury attorney had referred him to a bankruptcy attorney and had conferred with the bankruptcy attorney. There was no question the bankruptcy attorney knew of the lawsuit.

Debtor's current Chapter 7 case was a no-asset case and, according to the Chapter 7 Trustee's report, no distributions

were made to creditors. Furthermore, the Trustee did not abandon the personal injury cause of action. Debtor received a discharge on October 24, 2002, and his case was closed on October 31, 2002.

On June 23, 2003, Debtor filed a negligence complaint in the Superior Court of Bibb County against Macon–Bibb County Transit Authority and Willie James Lester ("Respondents") to recover damages, including medical expenses of $37,000, lost wages of $11,000, and unspecified damages for pain and suffering arising from the accident. Respondents filed a motion for summary judgment in the negligence case, contending that Debtor should be judicially estopped from pursuing his claim against them because it had not been disclosed on his bankruptcy schedules.

On November 1, 2004, Debtor filed a motion in this Court to reopen his bankruptcy case to list the asset. Debtor testified that he wants to reopen the case so that his creditors can be paid, but he also wants to receive payment for his pain and suffering. The Trustee has stated that he believes the personal injury suit has merit and that he will pursue it if the case is reopened. The Court held a hearing on the matter on January 6, 2005, and will now grant Debtor's motion for the reasons stated in this opinion.

### Conclusions of Law

Pursuant to 11 U.S.C.A. § 350(b) (West 2004), the Court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." The decision of whether to reopen a case is within the discretion of the bankruptcy court. *In re Ross,* 278 B.R. 269, 273 (Bankr.M.D.Ga. 2001). Debtor's personal injury cause of action accrued on July 24, 2001, approximately one year prior to the petition date. "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in

bankruptcy has standing to pursue it." *Parker v. Wendy's International, Inc.,* 365 F.3d 1268, 1272 (11th Cir.2004). The property remains in the estate until is has been either administered or abandoned by the trustee pursuant to 11 U.S.C. § 554. *Id.* "Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate." *Id.* (citations omitted). Debtor's negligence cause of action has been neither abandoned nor administered by the Trustee, so it remains property of the bankruptcy estate.

Both parties have acknowledged that the cause of action has the potential to pay Debtor's prepetition debts in full. Thus, the creditors stand to gain an enormous benefit if the case is reopened. Respondents argue, however, that Debtor's alleged bad faith in failing to schedule the asset should influence the decision. Respondents' main concern is that by reopening the case, the Court will effectively defeat their defense of judicial estoppel raised in the state court, thereby allowing Debtor to benefit from intentionally omitting the cause of action from his schedules. While the Respondents have stated that they do not object to reopening the case so long as Debtor does not personally benefit from the personal injury suit, the concession amounts to little more than acknowledgment of the *Parker* decision, which permits the trustee to pursue the claim.

In *Parker,* the circuit court stated that "the doctrine of judicial estoppel was improperly invoked. The claim against [the defendant] belongs to the bankruptcy estate and its representative, the trustee. The trustee made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct." 365 F.3d at 1273.

In *Parker,* the debtor had filed an employment discrimination lawsuit almost two years before filing a Chapter 7 peti-

tion. The lawsuit was not listed on her schedules. The debtor received a no-asset discharge, and her case was closed. The debtor then successfully reopened her bankruptcy case to add the lawsuit. The Chapter 7 trustee intervened in the employment discrimination case, and then the defendant filed a motion to dismiss, citing judicial estoppel as a defense. The district court granted the motion, and the trustee appealed. *Id.* at 1269–70.

The circuit court began its analysis by noting that when the debtor, rather than the trustee, is the party pursuing the omitted cause of action, the appropriate defense is lack of standing rather than judicial estoppel.[1] *Id.* at 1272. Because the omitted cause of action remains property of the estate, the trustee is the proper party to prosecute it. *Id.* Judicial estoppel generally requires the assertion of inconsistent positions in separate legal proceedings that are " 'calculated to make a mockery of the judicial system.' " *Id.* at 1271 (quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002)). However, because the trustee did not assert inconsistent positions, an essential element of judicial estoppel is missing. *Id.* at 1272.

The effect of *Parker* seems to point to the complete abolition of the application of judicial estoppel to causes of action omitted from a debtor's bankruptcy schedules. Because a trustee cannot be judicially estopped from asserting the claim, there is no way for a debtor to benefit from omitting the asset from the schedules, thereby failing to satisfy an essential element of the defense. Even if a debtor successfully prosecuted an omitted cause of action in his own name and won, any damages awarded would be property of the estate subject to seizure by the trustee. He occupies no better position by omitting the claim than he would had he disclosed it. Furthermore, if it were found that a debtor perpetrated some sort of fraud by his omission, there are other ways of punishing him that do not deprive his creditors and his dependants of the proceeds of the lawsuit.[2] For example, the bankruptcy court may revoke the discharge when a debtor conceals estate property.[3] 11 U.S.C.A. § 727(d) (West 2004). There should be no reason to treat the omission of a cause of action differently from the omission of another type of estate property asset.

The Respondents have argued that some limited judicial estoppel may be appropriate to prevent Debtor from receiving a windfall in the personal injury claim. The court in *Parker* stated in a footnote that "in the unlikely scenario where the trustee would recover more than an amount that would satisfy all creditors and the costs and fees incurred, then, *perhaps* judicial estoppel could be invoked by the defendant to limit any recovery to only that amount . . . ." 365 F.3d at 1273 n. 4 (emphasis added). However, upon consideration of an actual case, it seems unlikely the court would decide to create such a hybrid form

---

1. The court questioned its previous decision in *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002), on this point. 365 F.3d at 1272.

2. The loss of a right of recovery may fall more harshly on dependants than the debtor himself. Claimants for unpaid child support, for example, might be severely disadvantaged by a debtor's inability to recover lost wages.

3. Although there is a time limit on revocation of discharge based on fraudulently concealing property of the estate, 11 U.S.C.A. § 727(e)(2), this is the remedy authorized by Congress. It is inappropriate for third parties who were otherwise unharmed by the omission to seek to impose additional self-serving punishments on a debtor through the non-bankruptcy courts.

of judicial estoppel. One problem with such a remedy, to the extent it is intended to be punitive, is that it would result in unequal treatment of parties under the law. In this case, Debtor might be denied $1,000, but in the next case he might be denied $100,000 for the same offense. There is no equal protection in such a disparity and, likewise, no logic in allowing such a hybrid form of judicial estoppel in this unique circumstance.

■ Consider the foundation of all of this in the context in which the Supreme Court endorsed the application of judicial estoppel. In *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), a 1977 boundary dispute between the states resulted in a consent decree as to the interpretation of the phrase "Middle of the River" in a colonial-era document. *Id.* at 746–47, 121 S.Ct. at 1813. In the 2001 case, New Hampshire advanced a different definition of that phrase, and the Court held that its new interpretation was foreclosed by judicial estoppel. *Id.* at 748–49, 121 S.Ct. at 1813–14. In doing so, it listed three nonexclusive factors relevant to the judicial estoppel analysis.

First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." ... Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," ... and thus poses little threat to judicial integrity.... A third consideration is whether the party seeking to assert an inconsistent position would de-

rive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51, 121 S.Ct. at 1815 (citations omitted). New Hampshire had not only agreed to the prior interpretation, which was accepted by the Court, but the state also benefitted from it. *Id.* at 752, 121 S.Ct. at 1815–16. Furthermore, the Court stated that the " 'consent decree ... proposes a wholly permissible final resolution of the controversy both as to facts and law.'" *Id.* at 752, 121 S.Ct. at 1816 (quoting *New Hampshire v. Maine,* 426 U.S. 363, 368–69, 96 S.Ct. 2113, 2117, 48 L.Ed.2d 701 (1976)).

In contrast to the Supreme Court case, there was no final adjudication in Debtor's bankruptcy case as to the existence of the cause of action. Debtor never requested any determination regarding the cause of action, so he did not succeed in persuading the Court that it did not exist. And, the outcome of the bankruptcy case was unaffected by the omission. As the court in *Parker* explained, so long as it was not abandoned by the Trustee, it remained part of the bankruptcy estate, available to satisfy the creditors' claims. There is no correspondence between this case and the Supreme Court case.

*Parker* has not created a new legal concept; it has simply recognized that the doctrine of judicial estoppel never was applicable to a bankruptcy trustee. Thus, if no one can be prejudiced by the "contradictory positions" and the debtor cannot benefit from them, then the circumstances do not fit into the Supreme Court analysis. Considering that *Parker* confirms the inability of a debtor to deny the benefit of the asset to his creditors, how can the omission of the asset in the schedules be considered as having been "calculated to make a mockery of the judicial system" so as to warrant application of judicial estoppel as

the doctrine has been defined in *Burnes*, 291 F.3d at 1285, and later in *Parker*, 365 F.3d at 1271? Other holdings to the contrary are intended to protect the integrity of the judicial system by punitive action. Once a court decides to be punitive, the requirements of equal protection come into play and, as explained above, the punishments should be consistent for all omissions. The Bankruptcy Code provides for such a sanction; punitive application of judicial estoppel does not. See note 3 and accompanying text.

 As for Debtor's motion to reopen the case, courts deciding whether to reopen a bankruptcy case generally consider three factors: (1) the benefit to the debtor; (2) the prejudice to the opposing party; and (3) the benefit to the creditors. *In re Rochester*, 308 B.R. 596, 601 (Bankr. N.D.Ga.2004); *In re Lewis*, 273 B.R. 739, 744 (Bankr.N.D.Ga.2001); *In re Maloy*, 195 B.R. 517, 518 (Bankr.M.D.Ga.1996) (Walker, J.). One court narrowed the test when the purpose of reopening the case is to administer assets; in such a case the test "is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate." *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D.Ga.2001). Moreover, the Court "has a duty to reopen the estate whenever there is proof that it has not been fully administered." *In re Upshur*, 317 B.R. 446, 451 (Bankr.N.D.Ga.2004) (citing *In re Lopez*, 283 B.R. 22, 27 (9th Cir. BAP 2002)); *see also Rochester*, 308 B.R. at 600; *In re Hamlett*, 304 B.R. 737, 740 (Bankr. M.D.N.C.2003).

In *Maloy*, this Court found that the debtor and his attorney had pursued an omitted cause of action in the district court, knowing it had not been scheduled or administered in the bankruptcy case. 195 B.R. at 519. Because this showed a lack of good faith, the Court refused to reopen the case to allow the debtor to add the lawsuit to his schedules. *Id.* However, the Court also was influenced by the Chapter 7 trustee's declaration of his lack of interest in the cause of action. *Id.* at 521. For this reason, the Court determined that "the asset is not substantial enough for the court to conclude that the case must be reopened so the asset can be administered for the benefit of other creditors." *Id.*; *see also Lopez*, 283 B.R. at 27 (finding that the court need not reopen when the chance of recovery is remote). The Court ultimately refused to reopen the case because the debtor would be the only party to benefit from doing so, not merely because the debtor showed a lack of good faith. 195 B.R. at 519.

 This Court agrees with *Upshur* that "a motion to reopen a Chapter 7 case to add undisclosed [causes of action] should generally be granted so that the claim can either be liquidated for the benefit of creditors or released from the estate." 317 B.R. at 453. Debtor's reason for omitting the asset is not relevant to this proceeding.[4] To the extent *Maloy* relies on the debtor's lack of good faith to deny a motion to reopen, it may no longer be good law in light of *Parker*. In this case, a potentially valuable cause of action remains in the estate, and the Chapter 7 trustee has expressed an interest in pursuing it. Therefore, the Court will reopen the case to allow the asset to be administered.

---

4. The issue of Debtor's good faith may come before the Court in the future in some other context, such as if he asserts an exemption in the cause of action. Until such time, the Court will make no determination about Debtor's motives for omitting the cause of action.

As explained earlier in this opinion, Debtor will not benefit from reopening the case; his rights in the cause of action will be the same as if he had disclosed it. On the other hand, the creditors are likely to receive a substantial benefit; if the Trustee is successful in prosecuting the action, they will be paid in part or in full. The only prejudice to Respondents is that they will be required to defend the claim on the merits, which is no prejudice at all. First, they did not rely on any prior representation by the debtor in the schedules; second, *Parker* ensures that the defendant will always be liable for the claim, regardless of any omission by Debtor in his schedules. For the foregoing reasons, the Court will grant Debtor's motion to reopen the bankruptcy case.