**In re Stuart STEIN, Debtor.**

**No. 99–13154–CEC.**

United States Bankruptcy Court,
E.D. New York.

Sept. 17, 2008.

Richard A. Klass, Esq., Brooklyn, NY, for Debtor.

Robert A. Mulhall, Esq., Anguili Katkin & Gentile, LLP, Staten Island, NY, for Steven Barajas.

## DECISION

CARLA E. CRAIG, Chief Judge.

This matter comes before the Court on the motion of Stuart Stein (the "Debtor") to reopen this case to amend Schedule A to list an interest in real property located at 3908 Neptune Avenue, Brooklyn, New York (the "Property"). Steven Barajas, individually and as the Administrator of the Estate of Victoria Barajas, ("Mr. Barajas") opposes the Debtor's motion. An evidentiary hearing was held on June 18, 2008. For the following reasons, the Debtor's motion is granted.

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b) and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

### Background

The following facts are undisputed.

On March 11, 1999, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. The Debtor did not list any interest in real property on Schedule A to the petition. The Debtor listed approximately $25,000 of unsecured debt on Schedule F, consisting of credit card debt and medical bills.

On July 6, 1999, the Debtor was granted a discharge pursuant to 11 U.S.C. § 727. On September 14, 1999, the chapter 7 trustee filed his report stating that there were no assets to administer for the benefit of creditors. On September 30, 1999, the bankruptcy case was closed.

On December 14, 2007, the Debtor filed this motion to reopen the case to amend Schedule A to reflect an interest in the

Property. The Debtor's motion was prompted by a motion made by Mr. Barajas, individually and as the Administrator of the Estate of Victoria Barajas, in an action brought against him by the Debtor in New York state court (the "State Court Action"). In that action, the Debtor sought to enforce his rights to the Property, and, alleging that he owned the Property as tenants in common with Victoria Barajas, his late ex-wife, sought partition and sale of the Property, among other forms of relief. At the hearing before this Court on the Debtor's motion to reopen, the Debtor introduced a deed, dated April 30, 1990, whereby Victoria Barajas conveyed the Property to herself and the Debtor. Although the Debtor and Ms. Barajas subsequently divorced, the Debtor testified that they continued to live together as husband and wife, until she died, and the Debtor remains an owner of record of the Property.

Mr. Barajas sought to dismiss the State Court Action, contending that the Debtor is equitably estopped from asserting an interest in the Property because he failed to list the Property as an asset on Schedule A to his bankruptcy petition. Mr. Barajas also took the position in the State Court Action that, pursuant to the terms of the stipulation of divorce between the Debtor and Victoria Barajas, entered into prior to the commencement of this bankruptcy case, the Debtor gave up his ownership interest in the Property. The Debtor disputes this contention, and on March 24, 2008, this Court directed the parties to present this issue to the state court. By order dated April 10, 2008, the state court dismissed the Debtor's action without prejudice based on the conclusion that the Debtor lacked standing, stating that "[e]ven if [the Debtor] has an interest in the property, the action can only be brought by the bankruptcy trustee, at the trustee's discretion, upon the bankruptcy

court's reopening of the Chapter 7 bankruptcy [case]." State Court Order dated April 10, 2008. John S. Pereira, chapter 7 trustee in this case, has filed a statement indicating that he has no objection to the reopening of this case.

*Legal Standard*

Section 350(b) of the Bankruptcy Code provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Although the Bankruptcy Code does not provide a definition of "cause," courts have held that cause to reopen a bankruptcy case includes the need to amend schedules to add assets or creditors, or to commence lien avoidance actions. *E.g., Patriot Portfolio, LLC, v. Weinstein (In re Weinstein)*, 164 F.3d 677, 686 n. 7 (1st Cir.1999) (lien avoidance action); *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564 (S.D.N.Y. 2003), *aff'd*, 104 Fed.Appx. 199 (2d Cir. 2004) (adding asset); *In re Moyette*, 231 B.R. 494, 497 (E.D.N.Y.1999) (adding creditor). In deciding whether to reopen a case under § 350(b), courts "may consider equitable concerns, and ought to emphasize substance over technical considerations." *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864 (2d Cir. BAP 1997) (*quoting* COLLIER ON BANKRUPTCY, ¶ 350.03[5] pp. 350–10–11 (1996)). *See also Moyette*, 231 B.R. at 497. Courts will also consider "the benefit to the debtor, the prejudice to the affected entity ... [and] the benefit to the creditors." *In re Koch*, 229 B.R. 78, 85–86 (Bankr.E.D.N.Y. 1999). *See also Katz*, 300 B.R. at 571.

Bankruptcy Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a). When a case has been closed,

courts have held that the court "has a duty to reopen the estate whenever there is proof that it has not been fully administered," and to permit the addition of an asset to the schedules. *Lopez v. Specialty Rests. Corp. (In re Lopez),* 283 B.R. 22, 27 (9th Cir. BAP 2002) *(quoting Kozman v. Herzig (In re Herzig),* 96 B.R. 264, 266 (9th Cir. BAP 1989)); *In re Phelps,* 329 B.R. 904, 909 (Bankr.M.D.Ga.2005). *See also In re Miller,* 347 B.R. 48, 53 (Bankr. S.D.Tex.2006) ("cases are routinely reopened, in accordance with the statute, to administer those assets" that were not listed on schedules).

■ The reopening of this case to permit the amendment of the Debtor's Schedule A to list an interest in the Property would not constitute a determination that the Debtor has a beneficial interest in the Property. *See In re Upshur,* 317 B.R. 446, 454 (Bankr.N.D.Ga.2004) (in reopening a bankruptcy case, the court was not making any findings regarding the merits of the cause of action to be added to the schedules). To the extent that Mr. Barajas contends that the Debtor lost his interest in the Property through the stipulation of divorce, that issue must be determined, either by state court, or by this Court, if the trustee seeks to administer the Debtor's interest in the Property.

## Discussion

*The motion is not barred by laches.*

Mr. Barajas argues that the Debtor's motion is barred by laches, because it was filed more than eight years after the bankruptcy case was closed and ten months after the death of Ms. Barajas.

■ While there is no time limitation imposed by § 350 or Bankruptcy Rule 5010, the doctrine of laches may be a basis to deny a motion to reopen. *Emmerling,* 223 B.R. at 864. *See also* H.R.Rep. No.

95–595, at 338 (1997); S.Rep. No. 95–989, at 49 (1978). "Generally, laches is applied where it is clear that a plaintiff unreasonably delayed in initiating an action and a defendant was prejudiced by the delay." *Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.,* 959 F.2d 409, 423 (2d Cir.1992). The mere lapse of time does not constitute prejudice, and "[a] court of equity must consider whether reopening a case would prejudice the adversary's position." *Emmerling,* 223 B.R. at 864.

■ Mr. Barajas contends that, although the Debtor is a record owner of the Property, as shown on the April 30, 1990 deed, the Debtor has no beneficial interest in the Property by virtue of the terms of the stipulation of divorce between the Debtor and Victoria Barajas. Mr. Barajas argues that he would be prejudiced if the motion is granted because Ms. Barajas is deceased and no longer able to testify about the circumstances surrounding the stipulation of divorce between the Debtor and herself. Mr. Barajas's claim of prejudice is undercut by the well-established rule that parol evidence is inadmissible to prove the meaning of an unambiguous written agreement. *Albany Sav. Bank, FSB v. Halpin,* 117 F.3d 669, 672 (2d Cir.1997) ("parol evidence rule forbids proof of an oral agreement that might add to or vary the terms of a written contract that was intended to embody the entire agreement between the parties." *(quoting Stage Club Corp. v. West Realty Co.,* 212 A.D.2d 458, 622 N.Y.S.2d 948, 950 (N.Y.App.Div.1995))). Even if the court which ultimately decides the dispute between Mr. Barajas and the Debtor concerning the Debtor's rights in the Property determines that parol evidence is admissible to interpret the meaning of the stipulation of divorce, Mr. Barajas can attempt to prove that the divorce settlement was intended to give all ownership

rights to Ms. Barajas, and not the Debtor, through other sources, such as the testimony of others involved in the settlement, for example, Ms. Barajas's matrimonial counsel. *See Mayorga v. Tate*, 302 A.D.2d 11, 752 N.Y.S.2d 353, 355 (N.Y.App.Div. 2002) (executor of a decedent's estate may waive the attorney-client privilege in the interest of the deceased client's estate).

■ Furthermore, although the death of a witness may constitute prejudice, *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed.Cir.1992), the bar of laches is only applicable when the plaintiff (here, the Debtor) was responsible for the delay in bringing the action, *e.g., Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) ("Laches requires proof of . . . the lack of diligence by the party against whom the defense is asserted. . . ."); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir.2003) (to apply laches, it must be shown that the plaintiff "inexcusably slept on [his] rights" (*quoting Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir.1983)); *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997) (laches applies when a party is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant" (*quoting Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980)))). Here, the Debtor testified that he did not realize that he owned an interest in the Property until after Ms. Barajas died. (Tr.[1] 15–17, 24.)

The Debtor testified that he met Ms. Barajas in 1983 or 1984 and moved into the Property, which she owned, with her in 1984, and that they married in 1987. (Tr. at 12–13.)

The Debtor testified that Ms. Barajas wanted to refinance the Property in 1990, and that he helped her to obtain the loan. (Tr. at 14–15.) Although the deed to the Property shows that Ms. Barajas conveyed title to the Property to herself and the Debtor on April 30, 1990 (Exhibit 2), the Debtor testified that he did not understand that he owned an interest in the Property until March or April 2007 (Tr. at 15–17, 24). The Debtor testified that he thought he was signing a guarantee for the loan in 1990 (Tr. at 27), and this Court finds that testimony to be credible. The Debtor's testimony on this and other points was straight forward, consistent and did not reflect a sophisticated understanding of financial transactions. The Debtor's signature does not appear on the deed to the Property (as there would be no reason for him to sign it), and although initials appear on the deed to the Property beside the Debtor's name as a Grantee, no evidence was submitted that the Debtor initialed it. (*See* Exhibit 2; Tr. at 40.)

The Debtor testified that although he and Ms. Barajas divorced in 1996, they continued to live together as husband and wife until she died in February 2007. (Tr. at 18, 22, 30.) He testified that he obtained a copy of the deed in March or April of 2007 because he had been ousted from the Property by Mr. Barajas after her death, and went to court in order to seek to be allowed back in. (Tr. at 17.)

This Court finds that the Debtor's testimony is credible, and that he did not understand that he owned an interest in the Property until after Ms. Barajas died, eight years after he filed for bankruptcy.[2]

---

1. "Tr." refers to the transcript of the hearing held on June 18, 2008.

2. Although an information sheet from the website of the New York City Department of Finance, admitted as Exhibit 5, lists the Debt-

On these facts, this Court concludes that the debtor did not unreasonably delay. *See Yeda Research and Dev. Corp. v. Imclone Sys.*, 443 F.Supp.2d 570, 629 (S.D.N.Y.2006) ("When applying the equitable doctrine of laches in order to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter.") (*quoting Advanced Cardiovascular Sys. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed.Cir.1993)).

For all of these reasons, the Debtor's motion is not barred by the doctrine of laches.

*The motion should be granted.*

■ Mr. Barajas argues that the Debtor's motion should be denied because, at the time he filed for bankruptcy protection, the Debtor knew he maintained an ownership interest in the Property. For the reasons set forth above, this Court concludes that the Debtor did not know of his record interest until 2007.

■ In any event, there is no evidence of fraud or concealment of this asset by the Debtor, or of bad faith. *C.f. In re Koch*, 229 B.R. 78 (Bankr.E.D.N.Y.1999) (vacating order reopening case to convert chapter 7 case to chapter 11 case and to amend bankruptcy schedules on the grounds of the debtor's bad faith). Bad faith cannot be inferred from the possibility that the Debtor may obtain a surplus in the event the trustee successfully enforces the estate's interest in the Property. Indeed, a case may be reopened to administer surplus assets for the benefit of a debtor. *In re Graff*, 255 F. 241 (2d Cir. 1918). Furthermore, even though he may

be precluded from asserting an estoppel defense, this consideration does not outweigh the benefit to the creditors and the Debtor of reopening the case or warrant denial of the Debtor's motion. *See Phelps*, 329 B.R. at 910 (defendants' loss of an estoppel defense, requiring them to defend an action on the merits, "is no prejudice at all," and did not bar the reopening of the debtor's case to list a claim as an assets on the schedules).

If this bankruptcy case is reopened, and Schedule A is amended to include the Property, the trustee will be able to assert the estate's rights in the Property, and to administer that asset for the benefit of creditors. Given the amount of scheduled unsecured debt in this case, it may be possible for creditors to obtain a 100% distribution. In the event the trustee decides not to pursue the estate's interest, if any, he could abandon it, allowing the Debtor to pursue the action against Mr. Barajas, and obtain a determination on the merits of his rights in the Property. See 11 U.S.C. § 554. Therefore, granting the Debtor's motion may result in the administration of assets, will accord relief to the Debtor in compliance with § 350(b), and enable the Debtor's rights in the Property to be determined on the merits.

*Conclusion*

For the foregoing reasons, the Debtor's motion is granted. A separate order will issue.

---

or as a co-mortgagor with Ms. Barajas in connection with a $30,000 mortgage on the Property in 2003, the Debtor was not questioned about this transaction, either on direct or cross examination. Given the Debtor's

testimony about his understanding of his role in the 1990 transaction, and the unsophisticated approach to financial matters reflected in his testimony, this Court does not find that this Exhibit undermines this conclusion.